THOMAS K. RICHARD, as Assignee of the ROOSEVELT HOSPITAL, Plaintiff, *v.* NATIONAL TRANSPORTATION Co., INC., and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, First District,
February 5, 1936.

*Hayt & Hayt*, for the plaintiff.

*James A. Doherty*, for the defendants National Transportation Co., Inc., and Transportation Adjustments, Inc.

LEWIS (DAVID C.), J. Thomas McManus suffered personal injuries due to the negligence of the defendant National Transportation Co., Inc. He was brought to the Roosevelt Hospital. Necessary treatment was given to him, and in due time he was discharged.

Upon leaving the institution, he executed a paper directing and authorizing the tort feasor to pay the sum of $271.75 for hospitalization and medical care, and expressly assigning to the hospital such amount out of his share of the *proceeds of any settlement or judgment* that may result from his claim for damages for personal injuries.

This paper was promptly served upon the tort feasor and also upon a subsidiary corporate agent of the tort feasor authorized to make adjustments of accident claims against its principal.

Subsequent to the receipt of a copy of the said assignment, and a further proper written notice from the plaintiff, the tort feasor through its said agent settled with the said McManus direct (ignoring the assignment and purported lien of this plaintiff) by paying to him a sum in excess of $271.75.

The defendant Thomas McManus was never served and has not appeared.

The plaintiff and the corporate defendants have each moved for summary judgment.

I think the decision must wait on the answer to two propositions: (1) What rights, if any, did the plaintiff acquire by the paper signed by McManus; (2) has this court the power to enforce such rights?

Unless prohibited by public policy or statute, the paper signed by McManus was a valid assignment of the proceeds. The fact that at the time the instrument was executed all that the assignor possessed was a chose in action — a cause of action for personal injuries — did not in itself render the assignment of the proceeds an absolute nullity.

The existence of the cause of action gave a potential existence to the proceeds; the potential existence of the proceeds gave an equitable existence to the assignment.

" The fact that there was no fund then in existence, or any claim which could then be enforced by action, did not prevent the instrument taking effect as an equitable assignment." (*Jones* v. *Mayor, etc., of New York,* 90 N. Y. 387, at p. 390.)

"At law, there could be no assignment of the damages, because they were for a personal tort, and the assignment could not take effect upon the award, because that had no existence at the time. But it is otherwise in equity." (*Williams* v. *Ingersoll,* 89 N. Y. 508, 518.)

" There could be no legal assignment of a fund not in existence or proceeds not realized, but *equity treats them as if existing or realized,* and the contract for their receipt by Fairbanks as an *equitable assignment* of the stipulated share to him, and, as a consequence, makes him the equitable assignee of so much of the debt or demand as is represented by his share of the proceeds." (Italics mine.) (*Fairbanks* v. *Sargent,* 117 N. Y. 320, at p. 329.) (See, also, *People ex rel. Dannat* v. *Comptroller,* 77 id. 45; *Zogbaum* v. *Parker,* 55 id. 120; *Hussey* v. *Culver,* 6 N. Y. Supp. 466; affd., 130 N. Y. 681; *Munro* v. *Merchant,* 28 id. 9; *National City Bank of N. Y.* v. *Bon Ray Dance Frocks, Inc.,* 153 Misc. 549.)

Was this assignment prohibited by public policy or statute?

Section 41 of the Personal Property Law expressly prohibits the assignment of a cause of action for personal injuries.

The issue of public policy causes the court no concern. Repeated holdings set the judicial mind at rest on this point.

Section 41 of the Personal Property Law is a relic-like remnant of the laws of a social system that one is happy is long dead and buried. In the past champerty and maintenance was a dreaded danger. In the present condition of society we need not fear the same perversion of justice. Consequently our statutes are all that remain of the outworn maintenance and champerty.

The statutory prohibition against the assignment of a cause of action for personal injuries is the outgrowth or the survival of the laws against maintenance. (*Sedgwick* v. *Stanton,* 14 N. Y. 289.)

As to the transfer of this cause of action itself, the language of the statute seems plain; the prohibition is positive and absolute and existed before the enactment of the statute.

" In the present case, the cause of action was an assault and battery upon the plaintiff by the defendant. This could not be assigned, either at common law or by the provisions of the Revised Statutes or Code. (*The People* v. *Tioga Com. Pleas,* 19 Wend. 73; *McKee* v. *Judd,* 2 Kern. 622; *Zabriskie* v. *Smith,* 3 Kern. 322;

*Haight* v. *Hoyt*, 19 N. Y. 464; 2 R. S. 448, §§ 1 and 2.) " (*Pulver* v. *Harris*, 52 N. Y. 73, at p. 75.)

To rule that I cannot assign the cause of action, but that I can transfer 100 per cent of its proceeds sounds anomalous. It is tantamount to saying that I can transfer the substance but must retain the shell; that I can give you the *right to the recovery*, but I must hold the *right to recover*.

However, repeated precedents of many years' standing tell us this is the law. (*Williams* v. *Ingersoll*, 89 N. Y. 508, *supra; People ex rel. Stanton* v. *Tioga*, 19 Wend. 73.)

" The agreement for their services in prosecuting the action for false imprisonment to be compensated by the security of the verdict, when obtained, *although not effective to transfer the cause of action*, attached as an equitable claim to the verdict, and the assignment transferred the title to them." (*Zogbaum* v. *Parker*, *supra*, at p. 123; *Ely* v. *Cooke*, 28 N. Y. 365.)

" The assignment of the verdict and judgment to be recovered in a pending action for tort has been supported as not an assignment of a mere *right of action, but of property to come into existence in the future*." (Italics mine.) (5 C. J. p. 893.)

One ventures to ask what then becomes of the real party in interest rule.

Were the cause of action to recover for property damage, would we write the same distinction into the law? (*Henderson* v. *Park Central Motors Service, Inc.*, 138 Misc. 183, at p. 185.)

But aside from a situation like the instant case, much of the old restriction and condemnation has vanished. (*Porter* v. *Lane Construction Corp.*, 212 App. Div. 528, 531; affd., 244 N. Y. 523.)

This recognition and protection of the assignee of the share of the verdict or judgment was most frequently extended in the struggle of attorneys to protect and enforce their claims for services rendered in legal proceedings reduced to judgment and most of the citations submitted by the plaintiff come within that class.

Such precedents are not applicable to this case. The services of an attorney may be treated like the labor of an artisan. They contribute to the result or product — the verdict and the judgment representing, to a great extent, the fruit of the lawyer's labors.

An interesting commentary on the attorney's lien and its enforcement reads: " The lien, as thus established, is not strictly like any other lien known to the law, because it may exist although the attorney has not and cannot, in any proper sense, have possession of the judgment recovered. It is a peculiar lien, to be enforced by peculiar methods. · It was a device invented by the courts for the protection of attorneys against the knavery of their clients by

disabling clients from receiving the fruits of the recoveries without paying for the valuable services by which the recoveries were obtained. The lien was never enforced like other liens. If the fund recovered was in possession or under the control of the court, it would not allow the client to obtain it until he had paid his attorney, and in administering the fund it would see that the attorney was protected. If the thing recovered was in a judgment, and notice of the attorney's claim had been given, the court would not allow the judgment to be paid to the prejudice of the attorney. If paid after notice, in disregard of his rights, the court would, upon motion, set aside a discharge of the judgment and allow the attorney to enforce the judgment by its process so far as was needful for his protection." (*Goodrich* v. *McDonald*, 112 N. Y. 157, at pp. 163, 164; *Rooney* v. *Second Ave. R. R. Co.*, 18 N. Y. 368.)

" We do not think that such an agreement deprives a party of the right to control the management of his own cause, and to determine when the litigation shall cease and how far it shall be extended. The client still remains the lawful owner of the cause of action and is not bound to continue the litigation for the benefit of his attorneys when he judges it prudent to stop, provided he is willing and able to satisfy his attorney's just claims. In fact the lien under the agreement was intended for and operates only as a security for the attorney's legal claims, and unless those are prejudiced by the client's contract, she has unrestricted control of the subject of the action, and the terms upon which a settlement shall be effected. (*Pulver* v. *Harris*, 52 N. Y. 73; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 id. 448.) " (*Lee* v. *Vacuum Oil Co.*, 126 id. 579, at p. 587.)

The theory of the distinction seems to be that an assignment of the proceeds or the judgment is not an assignment of an existing cause of action, but is an assignment of future property.

In the old case of *Glegg* v. *Bromley* (L. R. [1912] 3 K. B. 474) the instrument transferred " all that the interest sum of money or * * * to which she is or may become entitled under or by virtue * * * of any verdict compromise."

The opinion of the court reads: " I think that all that was assigned was the fruits of an action. * * * Such an assignment does not give the assignee any right to interfere in the proceedings in the action. The assignee has no right to insist on the action being carried on; in fact, the result of a compromise is actually included as a subject of the assignment." (At p. 484.)

In considering the old inhibition against the assignment of a cause of action for personal injury, the court states: " What I find

is that there are words which do clearly assign whatever sum of money comes as the fruit of the action. They therefore purport to assign property defined by the source from which it comes as and when it becomes property." (See p. 489.)

Unfortunately, the case sidesteps the problem as to when, in the eye of the law, the property referred to (proceeds) becomes property.

Such are the main reasons the law does not treat a hospital or any other individual as it does an attorney.

Besides, the services of a hospital are purely voluntary, though they may be most valuable. For the hospital is a stranger to the cause of action, and to the legal proceedings for its enforcement or compromise. It has no basis for a lien. Nor can the hospital claim any rights by reason of subrogation. It does not act as an indemnitor nor does it pay or underwrite any damages sustained by the injured person. (*General Acc. F. & L. Assur. Corp.* v. *Zerbe Const. Co.*, 269 N. Y. 227; *Ocean A. & G. Corp.* v. *Hooker El. Co.*, 240 id. 37.)

" * * * that if another person has been compelled to pay the damages which the wrongdoer should have paid the latter becomes liable to the former. (*Dunn* v. *Uvalde Asphalt Paving Co.*, 175 N. Y. 214, 217.) " (*Lord & Taylor* v. *Yale & Towne*, 230 N. Y. 132, at pp. 136, 137.)

However, until the lawsuit ripened into a judgment, until the chose in action was converted into proceeds, the assignment, though it enjoyed a valid birth, only existed as an equitable assignment. Until such event, the plaintiff could hold no legal assignment.

All that the plaintiff ever secured or held was a right to a portion of prospective proceeds of a settlement or judgment *in futuro*. No judgment ever came into existence. And until the money came into the hands of the assignor or his agent, there could be no proceeds of a settlement in existence. For until the consideration for any settlement should leave the hands of the defendant they could not become proceeds; until there was a definite appropriation, the assignment would not attach. Until then the plaintiff's rights must be restricted to those of an equitable assignee, and for their enforcement must invoke the powers of a court of equity.

" When the bonds struck the hands of Underwood, the equity of Fairbanks became a legal title to the extent of his right. That right was equitable while the proceeds were unrealized, *because only the power of equity could treat them as realized;* but when they became actually realized and passed to Underwood as the exact and tangible proceeds contemplated by the contract, there was no longer need of the power of equity to imagine them, for there they were, the very realized proceeds, one-third of which by force of the contract

was that instant the property of Fairbanks by a legal title." (*Fairbanks* v. *Sargent*, 117 N. Y. 320, at pp. 336, 337.) (See, also, *Jones* v. *Mayor, etc., of New York*, 90 id. 387, 389; *Matter of Lahm*, 179 App. Div. 757; affd., 223 N. Y. 573.)

And though McManus had made the assignment, all that the law gave to the plaintiff assignee was a right to demand that the assignor take proper steps to enforce the cause of action. It put upon the shoulders of the assignor an obligation to do this but it left the control of any lawsuit or consummation of any settlement exclusively in the hands of the assignor. Hence, if the assignor in good faith settled with the wrongdoer, he was only exercising his rights; and consequently if the tort feasor in good faith paid McManus, they breached no obligation and violated no duty; for they were not bound to withhold nor to pay to the plaintiff any part of the settlement.

" This agreement was not in violation of any public policy, and it has no features which condemn it in equity. The plaintiffs were not to prosecute the actions upon shares, and their compensation was not contingent upon success. The assignment here could not even in equity operate upon the unliquidated claim for damages on account of the personal tort, but attached to the award the moment it was made. The damages had been suffered. An action had been commenced for their recovery, and hence the award had a potential existence and was not ever a mere possibility. In *People ex rel. Stanton* v. *Tioga Common Pleas* (*supra*) it was decided that a chose in action for a tort merely personal is not assignable so that a court of law will protect the assignee against a subsequent fraudulent discharge of the damages recovered in a suit prosecuted for such tort, although the tort feasor accepted the discharge with full knowledge of the assignment; but that the remedy of the assignee is by action against the assignor for breach of his express or implied undertaking not to do anything in the matter to prejudice the assignee." (*Williams* v. *Ingersoll, supra*, at p. 519.)

Were we to attach the right to independently sue to the assignment of a part of a cause of action, we might run into the prohibition of splitting a cause of action. (*Sisson* v. *Hassett*, 155 Misc. 667, 668.)

Here the injured defendant commenced no action. He adjusted his alleged cause of action without suit. Until the settlement was consummated, it was only an unexecuted accord, unenforcible in an action at law. From the legal standpoint, the plaintiff only has a cause of action to enforce its equitable lien. That is what this action amounts to.

Can this action be prosecuted to judgment against the tort feasor or its agent in the Municipal Court?

The State Constitution and statutes limit the jurisdiction of this court; make it a court of limited jurisdiction; confine its powers to actions at law.

And though we now have all of the parties and all of the proofs before the court, if the case calls for affirmative equitable relief this court is powerless to act.

This plaintiff, a stranger and volunteer, holding only an equitable assignment, must look to a court of equity for aid. Even at common law a chose in action ordinarily is only assignable in equity and could only be enforced in equity. (See *Glegg* v. *Bromley, supra,* at p. 489. See, also, *Holmes* v. *Evans*, 129 N. Y. 140, at p. 144.)

The Municipal Court is absolutely denied any of the affirmative powers of a court of equity.

The plaintiff must seek a court of competent jurisdiction.

This, of course, means new litigation, commonly denounced as multiplicity of suits. It is a salutary rule that a cause of action must not be split. (*U. S. Fidelity & G. Co.* v. *Graham & Norton Co.*, 254 N. Y. 51, 55.)

It is a rule that has its exceptions, created by the voluntary acts of the wrongdoer. (*Ocean Acc. & G. Corp.* v. *Hooker El. Co.*, 240 N. Y. 37, at p. 50.)

Nevertheless, under our system of a divided judicial jurisdiction, a situation tantamount to compelling a new law suit cannot be avoided.

It is submitted that until jurisdiction can be enlarged, provision might be made for a convenient transfer or removal of a cause of action pending in this court, without equity jurisdiction, to a court duly authorized and empowered to administer justice. (See Civ. Prac. Act, §§ 110, 110-a and 111.)

Or it may be that the law should take cognizance of the fact that when a man suffers sudden injury, medical or surgical attendance is the demand of the moment. That the drama of sudden human experiences will not respect regulation; that tragedy will not recognize legal preliminaries. Yet the duty to save a life or alleviate pain must never be weighed against formal or adequate provision for the recompense of the rescuer.

Should any doctor or hospital rendering these imperative and essential humane services be given the right to a lien on the patient's cause of action for personal injury; or the right to take an assignment of it, entitled to full recognition and enforcement in a court of law?

This is a question for the Legislature, not the court.

For he reasons stated, I am constrained to hold that the defendants' motion must prevail and the plaintiff's motion must be denied. Ten days' stay.