## In re BEHM'S ESTATE. BEHM v. GEE.

No. 7305.   Decided January 20, 1950.   (213 P. 2d 657.)

Rehearing Denied April 3, 1950.

See also 117 Utah . . ., 213 P. 2d 664.

152

See 6 C. J. S., Assignments, sec. 97. Wrongful death statutes, class to action is given by, see note, 117 A. L. R. 496. See, also, 16 Am. Jur. 68.

*Shirley P. Jones,* Salt Lake City, *Lewis Larson,* Manti, for appellant.

*Ray S. McCarty,* Salt Lake City, *C. Vernon Langlois,* Salt Lake City, for respondent.

LATIMER, Justice.

Venna Darlene Behm died in childbirth on February 18, 1947, leaving a husband and two infant daughters surviving her. She was the wife of respondent Edward C. Behm and the daughter of appellant Alma Gee. While appellant

believed the attending doctor was liable for his negligent treatment of deceased, the respondent apparently concluded there was little chance of recovering from the doctor or else he did not desire to invest his time and money in litigation, as he was willing to permit appellant to become the principal actor in this family tragedy. As a result of respondent's attitude, it was largely through the efforts of appellant that suit was instituted against the physician for his alleged negligent treatment of the deceased and a settlement effectuated.

Respondent, who claims to have been mentally upset by the death of his wife and not entirely cognizant of the things he was doing, concluded that appellant would be a proper person to represent the family in their litigation and that so long as he, appellant, would proceed with the details, there was little need of respondent concerning himself with the matter. Accordingly, on April 11, 1947, respondent joined in a petition to have appellant appointed administrator of the estate of respondent's deceased wife. On the same date, respondent joined in a petition to have appellant appointed guardian of the estates of the two minor daughters with authority to settle and compromise any claim they might have against the physician for the death of their mother. Pursuant to the petitions, appellant was appointed administrator of the estate of his deceased daughter and guardian of the estates of the granddaughters. Prior to the hearing on these petitions and on or about April 28, 1947, respondent executed a written assignment in which he assigned to appellant any interest he might have in and to any sum that might be recovered from the doctor.

On January 7, 1948, appellant as administrator petitioned the court for authority to settle the claims of the heirs for the sum of $15,000 and for authority to pay his attorney a proportionate part of the recovery. The court issued an order in accordance with the prayer of the petition and

thereafter a settlement was effectuated. The draft given to appellant for final settlement cleared through clearing house channels and on January 28, 1948, appellant deposited the money to his credit in his capacity as administrator. No further proceedings appear in the file until April 23, 1948, although the transcript shows that a dispute arose between appellant and respondent and that between the date of the settlement and April 23, 1948, respondent consulted with counsel who in turn discussed compromise solutions with counsel for appellant. No agreement was reached during these discussions, so on the latter date respondent filed a petition in which he requested the court to issue an order requiring appellant to show cause as to why he should not immediately distribute the funds in his possession, and to further show cause why the court should not declare the pretended assignment executed by respondent as being null and void. In substance, the grounds alleged in the petition for defeating the assignment were, unassignability and fraud in inducing appellant to execute the instrument.

Objections to the proceedings were filed by appellant but these were overruled. Appellant then filed his final account and upon petition for approval and distribution of the funds remaining in his possession. Passing over the incidental expenditures included in the account appellant requested authority to pay an additional attorney's fee and an administrator's fee and to distribute the remaining sum in three equal parts, one-third to himself as assignee of respondent's interest, and two-thirds to himself as guardian of the estates of the two minor children.

Respondent filed his objections to this account and the grounds used as the basis for his objections were substantially the same as those set forth in his previous petition to invalidate the assignment, namely, fraud in procuring the assignment and unassignability. There were some other grounds mentioned but they are of no materiality

to this decision as they deal principally with appellant's competency to act as guardian for the infants, and another suit deals with that litigation. However, there is one allegation made by respondent touching on his claim to part of the proceeds which is of importance. This allegation is to the effect that respondent expended the sum of $1652 for expenses of his wife's last illness and burial and that the court should take this element into consideration in determining the amounts to be distributed to the surviving heirs. The prayer of the petition was couched in the following language:

"That the court enter its order distributing the $11,250.00, together with interest thereon, to the respondent as the surviving husband and to the two surviving infants, taking into consideration the expenditures made by respondent and the physical and mental condition of the children."

The petition for final distribution and the objections thereto came on for hearing before the court below. The trial judge originally confined the testimony to the issues pleaded but as the trial progressed and the breach between the litigants widened the issues became vagrant and wandering. While the findings of fact and conclusions of law deal with the first and final account of appellant and the distribution of the funds remaining in his possession they contain many statements and conclusions which might be very material in a subsequent and properly pleaded action to remove appellant as administrator, but for the purposes of this suit are far outside the framework of the pleadings. We make this observation not in any way of criticism but only so the parties will know why we do not relate all of the facts touching on appellant's improper handling of the funds after he was informed respondent was contemplating legal action.

Discarding what we believe to be immaterial, there remain four important questions to be answered: (1) Did the trial court err in holding that proceeds obtained from third

persons for wrongful deaths are not distributed to the surviving heirs in the same proportions as are the assets of an estate in the absence of a will? (2) Did the court err in holding respondent's anticipated portion of the recovery was not assignable? (3) If so, did the court err in holding the assignment was void because of fraud, champerty and no consideration? And (4) Did the court err in directing the clerk of the court to pay respondent's counsel a stated attorney's fee? We treat the questions in the order stated.

This appears to be the first time this court has been presented with the necessity of determining the appropriate distribution to heirs of the proceeds realized from a claim for wrongful death. Generally speaking there are two methods used by courts when making such a distribution. The first is in accordance with the particular statutes on descent and distribution in probate proceedings. The second is by a proportional method, the proportion being determined by the loss suffered by each heir. We adopt the latter method.

Section 104-3-11, U. C. A. 1943, insofar as pertinent, provides as follows:

"* * * when the death of a person not a minor is caused by the wrongul act or neglect of another, his heirs, or his personal representatives for the benefit of his heirs, may maintain an action for damages against the person causing the death. * * * In every action under this and the next preceding section such damages may be given as under all the circumstances of the case may be just."

In keeping with the provisions of this section, suit can be instituted either by the heirs themselves or by the personal representative of the deceased for the benefit of the heirs. The wording of this section compels a conclusion that the legislature intended that the proceeds obtained from the wrongdoer would not be intermingled with other assets of the estate of the deceased. Otherwise, the couse of action would have been vested in the personal representative alone and the amount recovered

would have been subjected to administration by him in the same manner as other estate assets.

For many years this court has confirmed the principle that the statutory beneficiaries take separate and apart from the estate. The funds may pass through the hands of the personal representative but the cause of action is a new cause which runs directly to the heirs. In *Morrison* v. *Perry,* 104 Utah 151, 140 P. 2d 772, 780, we said:

"* * * Under our wrongful death statute, 104-3-11, R. S. U. 1933, the law does not seek to punish the wrongdoer, but simply to compensate the heirs for the loss sustained. (Citing cases.) It is undisputed in the evidence that deceased's widow paid $819.40 for funeral services and that this amount was reasonable. There is, however, no evidence that the estate was insolvent, nor was there evidence to show whether or not the widow made a claim against the estate for reimbursement, or whether or not she was in fact reimbursed from the estate. If the widow was reimbursed from the estate was she damaged in this particular? The answer is obviously no, if we keep in mind that *the estate is separate and distinct from the plaintiff or the statutory beneficiaries in this action. The estate may be damaged to that extent but the estate is not a party under our death statute.* (Citing cases.) * * * This court in the case of *Mason* v. *Union Pacific Ry. Co.,* 7 Utah 77, 24 P. 796, held that the death statute, 104-3-11, of the R. S. U. 1933, was not a survival statute but that it created a new cause of action in the heirs." (Italics added.)

Again in the recent case of *Van Wagoner* v. *Union Pacific Ry. Co.,* 112 Utah 189, 186 P. 2d 293, 303, the rule is in the following language:

"Appellants rely on the cases of *Mason* v. *Union Pac. Ry. Co.,* 7 Utah 77, 24 P. 796, and *Halling* v. *Industrial Commission,* 71 Utah 112, 263 P. 78, which, in substance, hold that a claim for death is a separate and independent cause of action and is not a continuation of the right of action of the injured party for personal injuries. The death creates a new cause of action for the loss suffered by the heirs by reason of death, and only comes into existence upon the happening of death."

Appellant in effect concedes this rule but directs our attention to the wording of Section 104-3-11, U. C. A. 1943,

supra, and particularly the phrase "for the benefit of his heirs." He contends that even though the estate may not be interested in the recovery, still the personal representative brings the action for all heirs and the wording of the section indicates a legislative intent to have the heirs benefit to the same extent and in the same proportion as they inherit under the probate code. This argument loses much of its force when all parts of the section are considered and the elements of damages recoverable in a death suit are given weight. The section provides that the damages recoverable are those which under all the circumstances may be just. If we were to consider the immediate family as a unit, under appellant's theory, each heir would suffer damages in the same proportion as he receives under the probate code. Such a division might permit an heir who suffered little to recover a substantial sum and conversely require an heir who had suffered a great deal to accept a mere pittance. In some instances the statutory division might accurately reflect the relative damages suffered. But in many instances it would not and in those instances great injustices would be the result.

It is no answer to say that injustices exist in the statutory method of distributing estates. The legislature in providing for succession in the absence of a will prescribed for distribution without regard to losses suffered by the individual heirs, but in wrongful death cases a different method is implied which has a tendency to eliminate some of the claimed unfairness of the succession statutes.

Perhaps if we enumerate some of the elements of damages that can be recovered in wrongful death cases we will get a better picture of the manner in which the proceeds should be divided. Besides the financial support furnished by deceased to his or her family, the loss of affection, counsel and advice, the loss of deceased's care and solicitude for the welfare of his or her family and the loss of the comfort and pleasure the family of the deceased would have received are all matters to be considered in assessing damages re-

coverable under 104-3-11, U. C. A. 1943. *Pool* v. *Southern Pac. Co.*, 7 Utah 303, 26 P. 654; *Evans* v. *Oregon Short Line R. Co.*, 37 Utah 431, 108 P. 638, Ann. Cas. 1912C, 259; *Chilton* v. *Union Pac. Ry. Co.*, 8 Utah 47, 29 P. 963.

The ultimate would be to distribute to each heir a share which would be in exact proportion to the loss each had suffered. This is not possible of accurate ascertainment but the individual's losses can be determined within reasonable limits and relative proportions fixed. To distribute the fund in proportion to the losses suffered makes the allocation more consonant with the underlying theory of damages. In certain instances a trial judge might conclude that the distribution provided for by the statutes of descent and distribution closely approximate the losses suffered by the heirs and make distribution on that basis. But we see no good reason why he should be so limited in all cases.

While the trial judge announced sound principles we do not believe he applied them correctly in this case. We quote the conclusion of law adopted in the court below.

"That because of the fact that Edward C. Behm does not require or need any of the recovery and because of the condition of arrested development and the needs of the minor children, to wit: Venna Julene Behm and Darlene Behm, the said Edward C. Behm is not entitled to any order awarding him part of said recovery."

The elements used by the court in this conclusion are only part of the appropriate ones. We have already discussed in detail some of the elements which determine the damages suffered and the corresponding distribution to the one who has been damaged. It may be that respondent's loss is considerably less than the minor daughters' but a surviving husband's actual damages cannot be reduced to such an extent that he fails to get any award. Respondent pleaded and proved that he paid approximately $1600 for expenses of the last illness and burial purposes. The record

establishes that the deceased left no estate and consequently respondent was required to pay these expenses without any possibility of recovering them from her estate. These were part of the damages alleged in the death suit and must have been considered when settlement was made. Under the rule announced in the case of *Morrison* v. *Perry,* supra, respondent was at the least entitled to recover the amount expended for burial expenses and we believe that when he is by statute made legally liable for expenses of the last illness the same principle should apply. To reduce his interest in the recovery below the amount he so expended would deny him the right to recover the sum he was legally required to pay as a result of the wrongdoer's negligence.

We conclude that respondent's portion of the death claim is assignable. Respondent contention is that such a holding would overrule those cases in which this court had held that a cause of action for wrongful death is non-assignable. Had respondent attempted to assign a cause of action for death then the cases cited would have been controlling. However, appellant assigned not the cause of action, but rather, assigned any interest he might have in the recovery. While at first blush this may appear to be a distinction without a difference, upon closer examination it becomes apparent that there is a real and substantial difference. The cause of action cannot be split up between the heirs but the amount recovered can be and is. The problem thus presented is this. Can an heir, after a cause of action has arisen in which he has an interest make an assignment of his interest?

Much has been said by courts in the past regarding the assignability and non-assignability of contingent interests at law and in equity. Law courts originally refused to recognize assignments of contingent interests of any kind. Later, because of the Chancellor's liberal enforcement of such assignments, the judges presiding in courts of law agreed to uphold assignments of contingent interests having a potential realization at the time of the assignment.

Modern courts, however, have adopted the more liberal equitable rule enforcing assignments of things not in esse but mere future possibilities so long as the assignments are fairly made for an adequate consideration without offending against public policy. Thus assignments of future contractual interests, anticipated interests in real or personal property, future wages or the expectancy of an heir in the estate of an ancestor have all been repeatedly upheld by modern decisions.

Courts have adopted the same rule where one who has sustained personal injuries assigns such proceeds as may possibly be recovered by him in an action brought against the tort-feasor. Moreover, a court of equity will enforce the assignment even though the cause of action is not assignable. *Richard* v. *National Transportation Co.*, 158 Misc. 324, 285 N. Y. S. 870; *North Chicago St. R. Co.* v. *Ackley*, 58 Ill. App. 572, reversed on other grounds, 171 Ill. 100, 49 N. E. 222, 44 L. R. A. 177; *Hutchinson* v. *Brown*, 8 App. D. C. 157; *Schubert* v. *Herzberg*, 65 Mo. App. 578; *Pittsburg, C., C. & St. L. R. Co.* v. *Volkert*, 58 Ohio St. 362, 50 N. E. 924. In the first cited case, the injured person assigned to a hospital a share of any proceeds he should acquire from any settlement or judgment to be paid by the tort-feasor. The court recognized that under the law of the state of New York the cause of action was non-assignable, but held that the assignment of a share of the proceeds was enforceable in equity. The court said [158 Misc. 324, 285 N. Y. S. 872]:

"Unless prohibited by public policy or statute, the paper signed by McManus was a valid assignment of the proceeds. The fact that at the time the instrument was executed all that the assignor possessed was a chose in action—a cause of action for personal injuries —did not in itself render the assignment of the proceeds an absolute nullity.

"The existence of the cause of action gave a potential existence to the proceeds; the potential existence of the proceeds gave an equitable existence to the assignment.

" 'The fact that there was no fund then in existence, or any claim which could then be enforced by action, did not prevent the instrument taking effect as an equitable assignment.' * * *

"To rule that I cannot assign the cause of action, but that I can transfer 100 per cent of its proceeds sounds anomalous. It is tantamount to saying that I can transfer the substance but must retain the shell; that I can give you the *right to the recovery*, but I must hold the *right to recover*.

"However, repeated precedents of many years' standing tell us this is the law. * * *" (Italics added.)

Under the rules announced, the assignment by respondent of the proceeds, if any, that should be recovered from the malpractice suit instituted by appellant, is valid and enforceable.

The trial court's general finding of fraud cannot be sustained. It is extremely doubtful that the allegations of the petition are sufficient to raise this issue. But assuming they are, the evidence is insufficient to sustain any such finding. Any evidence suggesting misconduct on the part of the appellant covers activities during the period subsequent to the assignment. We mention this assignment of error merely because of a finding by the trial judge that he found generally all issues of fact in favor of respondent and against appellant. Undoubtedly as a result of this finding both parties have argued this issue before this court.

We are unable to sustain the trial court's conclusion that the assignment was void because champertous. This issue was never pleaded and the evidence was insufficient to establish such a contention. Even after a discussion in court that the question might be of importance, no request was made to amend the pleading so as to place it in issue. While we liberally construe pleadings, the findings as made should be within the framework of the petition as originally drawn, or as amended, and there should be evidence to support them.

Respondent's contention that there was no consideration for the assignment is not sustained by the record. By statute, respondent was entitled to be appointed administrator of his wife's estate and could institute the action in this representative capacity. He was also entitled to be appointed guardian of the estates of his two daughters. Appellant was not required to assume the burden of either appointment. There were no assets of the estate or of the guardianships other than the claim against the doctor and apparently respondent was not disposed to become the active party in prosecuting a suit of such doubtful value. Whether or not he was unwilling to risk his time or money or both for such a purpose does not appear. But there can be no question but what he was perfectly willing to permit his father-in-law to assume the burden, finance the litigation and take all the risks. The record conclusively establishes that appellant spent some time and some money in prosecuting the action with beneficial results. Maybe the expenditures were not large but the investment was made without assurance of any return. Moreover, they directly benefit respondent whether he obtains possession of any money now or whether it is subsequently expended for the benefit of his daughters. Appellant performed services for the benefit of respondent which he, appellant, was not legally liable to do, and it does not lie in the mouth of respondent to say that the detriments suffered by appellant were so insignificant that they will not support the assignment of a claim which respondent considered of little or no value.

The award of attorney's fees is reversed. We are unable to ascertain the reason for this award. There are four individuals who might be interested in the fund: Appellant, respondent, and the two infant daughters. However, only three can recover as heirs, or heirs and assignee. Respondent was denied any recovery by the trial court unless the attorney's fees be considered as an award to him. Assuming the minors have had their inter-

ests increased by the trial court's ruling that respondent should not prevail, their estates should not be depleted to finance respondent's suit to recover his claimed portion of the fund. The appellant cannot be charged with the fees so that either respondent was given a partial recovery or the court had in mind charging the estate. To charge the estate would be inconsistent with the court's ruling that the proceeds go to the heirs and do not become assets of the estate. Moreover, the estate has not been benefited as this litigation is over distribution of the assets. The estate should not bear the burden of litigation between distributees. See *In re Yonk's Estate*, 115 Utah 292, 204 P. 2d 452. The award cannot be sustained as being a charge against respondent's portion as this is hostile to the finding that he was not entitled to participate.

Respondent now asserts that he is not complaining because the court failed to award him a part of the recovery and that appellant is not a party who can complain. This assertion hardly warrants answering. An assignor cannot depreciate the assignment by merely saying he does not want the fund he assigned and the assignee can complain if he is denied recovery on his assignment.

The trial judge in his disposition of the cause attempted to conserve the maximum amount of the estate for the infant survivors and this should be the objective of all parties to this litigation. Much as we might like to accomplish this desirable result, except in those cases where the evidence shows that a husband did not suffer any damage, pecuniary or otherwise, we cannot deny him his right to participate in the recovery. Accordingly, the judgment must be reversed.

In a retrial the trial judge should determine the relative loss suffered by the three heirs and provide for distribution an a proportionate basis. Respondent's portion should be awarded to appellant. The amount awarded should be in full settlement of all claims by appel-

lant including any claim he may assert for services in his representative capacity.

Reversed. Costs to appellant.

PRATT, C. J., and WOLFE, WADE and McDONOUGH, JJ., concur.