[No. 40806-2-I.   Division One.   October 12, 1998.]

THE CITY OF MOUNT VERNON, *Petitioner,* v. MOUNT VERNON MUNICIPAL COURT, ET AL., *Respondents.*

*James W. Nelson*, Prosecuting Attorney, for petitioner.

*Kenneth J. Evans* of *Lewis, Evans & Pollino*, for respondents.

AGID, A.C.J. — The City of Mount Vernon appeals the municipal court's ruling suppressing the results of a breath test administered to Kathryn McEuen. The trial court ruled that the test failed to comply with the protocol in WAC 448-13-050 because the results could not be printed immediately upon completion of the test. Because WAC 448- -13-050 does not specify that a printout must be generated immediately after a breath test is completed and there was no evidence the machine was tampered with, we reverse.

## FACTS

On the evening of February 8, 1997, McEuen was arrested by Mount Vernon Police Officer David Deach on suspicion of being in physical control of a motor vehicle while intoxicated. Officer Deach transported McEuen to the Mount Vernon Police Department and asked her to submit two breath samples for testing by the BAC DataMaster Verifier. McEuen provided two breath samples. Officer Deach testified that he inserted a ticket and entered information into the BAC DataMaster. But at the conclusion of the test the machine did not eject a ticket reflecting the results of the breath test as it normally would. Officer Deach placed an "out of service" tag on the machine and notified the DataMaster technician.

Trooper Bosman, the DataMaster technician, testified he was notified that there was a machine at the Mount Vernon Police Station with a stuck ticket. When he arrived at the police station later in the day,[1] he found machine No. 949067 tagged "out of service." Trooper Bosman could not recall whether there was a ticket inside the machine or if he inserted a new one. But he did recall that he did no more than press the copy key and enter the required passwords. He did not enter any new information and did not know to whom the last test was administered. The machine printed out a ticket which he left with the front office for Officer Deach. Printed on that ticket were McEuen's name, address, and the time and date of the last test. The ticket showed the results of that breath test as .170 and .174. Because he could not personally verify any of the information contained on the ticket, Officer Deach did not sign the ticket or fill in the agency portion on the bottom of the ticket.[2]

---

[1]Trooper Bosman testified that he could not recall whether it was morning or midafternoon. Thus, according to his testimony, the ticket was printed between 5 and 12 hours after the test was administered.

[2]The number on the ticket Officer Deach had inserted was 1015746; the number on the ticket he received from Trooper Bosman was 1005198.

McEuen was charged with being in physical control of an automobile while intoxicated. She moved to suppress the breath test document arguing that, given the delay between completing the test and printing, it failed to meet the requirements for a valid test listed in WAC 448-13-050. After hearing testimony by the arresting officer and the breath test technician, the Mount Vernon Municipal Court granted her motion.[3] The City applied for a writ to review the municipal court's decision. The Skagit County Superior Court issued a writ but later quashed it without explanation. We then granted discretionary review.

## DISCUSSION
### I. Validity of Breath Test

WAC 448-13-050 provides:

**Test defined.** The test of a person's breath for alcohol concentration using the BAC Verifier DataMaster shall consist of the person insufflating end-expiratory air samples at least twice into the instrument, sufficient to allow two separate measurements. There will be sufficient time between the provision of each sample to permit the instrument to measure each sample individually. The two valid breath samples will constitute one test.

The BAC Verifier DataMaster will perform this test according to the following protocol when being employed to measure

---

[3]The municipal court's written conclusions of law stated:

1. To be a valid and admissible test the requirements of WAC 448-13-030 must be complied with in [their] entirety.

2. The WAC requires a print out of the results on a BAC document containing all the proper information.

3. The document sought to be introduced herein is incomplete and was not printed out at the completion of the test.

4. The document is also not a document but merely a copy.

5. As a result the document #1005198 is inadmissible into evidence in this matter.

an individual's breath alcohol concentration. *Any test not performed according to the following protocol is not a valid test.* Successful compliance with each step of this protocol is determined from an inspection of the breath test document. These steps are necessary to ensure accuracy, precision, and confidence in each test.

Step 1.  Data entry.

Step 2.  Blank test with a result of .00.

Step 3.  Internal standard verified.

Step 4.  First breath sample provided by subject.

Step 5.  Blank test with a result of .00.

Step 6.  External standard simulator solution test. The result of this test must be between .090 and .110 inclusive.

Step 7.  Blank test with a result of .00.

Step 8.  Second breath sample provided by subject.

Step 9.  Blank test with a result of .00.

*Step 10.   Printout of results on a breath test document.*[4]

McEuen contends that the ticket offered into evidence by the City is not a valid breath test document because WAC 448-13-030(5) defines "breath test document" as "the form which is printed by the BAC Verifier DataMaster on completion of a breath alcohol test." She argues that because no document was printed "on" completion of the test she was administered, it was not a valid test. The City argues that so long as the results are printed some time after a test is administered, it is a valid test. WAC 448-13--050 expressly provides that a test not performed according to the protocol it establishes is not a valid test.[5] It is

----

    [4](Emphasis added.)

    [5]WAC 448-13-060 also provides that "[a] test shall be a valid test and so certified" if the requirements of WAC 448-13-050 are met, together with those in WAC 448-13-040 and four additional criteria to assure precision and accuracy set out in WAC 448-13-060. *See also State v. Wittenbarger,* 124 Wn.2d 467, 473, 880

undisputed that the breath test results here were not printed until sometime later that day. Thus, if WAC 448--13-050 requires a printout of the results of a breath test immediately after the test is complete, the test was invalid. On the other hand, if WAC 448-13-050 requires only that a printout of the test results be produced at some time after a test is administered, it was valid.

■ ■ We construe statutory language according to its plain and ordinary meaning[6] and assume that the Legislature meant exactly what it said.[7] In determining the plain and ordinary meaning of a term which is not defined in a statute, we may resort to its dictionary definition.[8] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY explains that when "on" is used as a function word to indicate position with regard to time, it means an "occurrence at the same time as or following or as a result of something."[9] While this contemplates a direct connection between the occurrence and the referenced event such that one follows logically and sequentially upon the other which will often be immediate, it does not require immediacy.

■ WAC 448-13-050 contemplates that a printout will generally be produced as soon as a breath test is completed in order "to ensure accuracy, precision, and confidence in each test." But it falls short of requiring that the ticket be printed immediately after the test is completed. Here there was a direct, logical and sequential connection between the

---

P.2d 517 (1994) (in order to be considered valid, the entire test must be performed following all protocols).

[6]*Flanigan v. Department of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994).

[7]*Geschwind v. Flanagan*, 121 Wn.2d 833, 841, 854 P.2d 1061 (1993).

[8]*Flanigan*, 123 Wn.2d at 426.

[9]WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1574 (1969). WEBSTER'S cites as examples the phrases "will send a check on receipt of the book," "will do it on your arrival," and "was uneasy on arriving home and finding no one there."

printout of the breath test results and the completion of the test itself. As explained above, when the machine did not eject the ticket Officer Deach had inserted, he tagged it and set it aside for the breath test technician. When the breath test technician arrived later the same day, the machine did not appear to have been disturbed. There was no evidence or argument below that the machine had been tampered with or the results were not reliable. In fact, Trooper Bosman, the breath test technician, testified that the information printed on the ticket had to have been that gathered in connection with the last test conducted on the machine. When asked to explain why he was certain that the results which printed out when he pushed the copy button were those of the last test conducted on the machine, Trooper Bosman explained:

> The central processing unit of the computer while the test is being run stores that information in short-term memory. From the short-term memory it is sent to the printer. There is nothing else [that] can go to the printer except what is in the short-term memory and that can go at the time of the test or can be commanded to go at a later time [a]s a copy if no one else has run the instrument or shut it off or on. If you shut it off or on you empty that short-term memory. If you run another test you displace the information that was in there with the new test. There is no way you can manipulate the data that is in the short-term memory.

It would obviously be preferable to have the machine generate a printout that is signed by the officer who conducted the test immediately after a breath test is administered. This would be in accord with the stated goal of ensuring accuracy, precision and confidence in each test. But there is no basis under these facts for concluding that the printout here did not comply with the protocol established in WAC 448-13-050. McEuen points to no administrative rule

requiring the signature of the officer who conducted the test and the name of the police agency for admission of a breath test document. Nor do the rules require that the same officer who administers the test be the one to push the button that prints out the results of the test. McEuen also does not point to any rule which provides that a "copy" generated under the conditions here is not admissible as evidence of the results of a breath test.[10] Under the circumstances of this particular case, there is no basis for concluding that the breath test itself was invalid or that the results of the test were otherwise inadmissible.[11]

## II. Writ of Review

■■ When a municipal court enters an order suppressing evidence, the City has no right to a RALJ appeal unless the trial court expressly finds that the practical effect of the order is to terminate the case.[12] But the City may apply to the superior court for review of the municipal court's interlocutory ruling by writ of review.[13] Although the superior court initially issued such a writ, it later quashed it without any apparent explanation. Review of a superior court decision on a writ of review is a matter of discretion subject to the considerations found in RAP 2.3(d).[14] RAP 2.3(d)(3) provides that a writ of review is appropriate where a deci-

---

[10]This does not mean that it would not have been prudent for the breath test technician to keep a record of the number of the ticket he pulled out of the machine and the number of the ticket he inserted.

[11]We would reach a different result if there were any reason to believe that the machine had been used after Officer Deach put it aside and marked it "out of service."

[12]RALJ 2.2(c)(2).

[13]*City of Seattle v. Williams*, 101 Wn.2d 445, 456, 680 P.2d 1051 (1984).

[14]*Williams*, 101 Wn.2d at 456.

sion raises an issue of public interest.[15] Here, the breath test technician testified that he encounters "stuck tickets" and related printing problems about once a month. The record reflects that these problems occur about 100 times a year statewide. As our decision to grant discretionary review reflects, we deem this an issue of sufficient public interest to warrant appellate review. We can discern no tenable reason for the superior court's decision to quash the writ.

Reversed and remanded for trial.

COLEMAN and APPELWICK, JJ., concur.

---

[15]While Officer Deach testified that this was the first and only time he had ever had a problem with obtaining a printout of a breath test, McEuen mischaracterizes the record when she states that it was his testimony that it was a "shock" to him. In fact it was defense counsel who characterized it as a "[t]otal shock" in the course of asking whether the officer was surprised by the machine's failure to generate a printout.