1999 UT 4

**Thelma OXENDINE, Plaintiff and Appellant,**

**v.**

**Lylbren Franklin OVERTURF, Gregory Overturf, Kenna Teal, Sharon Honerlah, Wanda Banning, Pamela Daniels, Dennis Fernandez, James E. Morton, Peter Collins, and Bugden Collins & Morton, L.C., Defendants and Appellees.**

No. 970410.

Supreme Court of Utah.

Jan. 22, 1999.

C. Michael Lawrence, West Valley, for appellant.

James E. Morton, Peter C. Collins, Tara L. Isaacson, Salt Lake City, for appellees.

DURHAM, Associate Chief Justice:

¶ 1 This is the third appeal arising from separate cases concerning the proper distribution between heirs of settlement proceeds recovered from the University of Utah Medical Center as a result of the death of Gay Overturf. Here the decedent's mother, Thelma Oxendine, appeals the district court's grant of summary judgment in favor of defendants, the probate heirs and their attorneys. The trial court held, as a matter of law, that she was not entitled to bring claims against them to recover a share in the settlement proceeds. Oxendine also appeals the district court's rejection of her motion for rule 11 sanctions as untimely. We affirm in part, reverse in part, and remand this case to

the district court for proceedings consistent with this opinion.

¶2 Gay Overturf died on October 14, 1995, due to the negligence of the University of Utah Medical Center ("Medical Center"). Frank Overturf, her husband, as the personal representative of her heirs, filed a wrongful death action against the Medical Center. At the time of her death, decedent was survived by her husband, six children, and Oxendine, her mother. Attorney James E. Morton represented Overturf (personal representative of Gay Overturf's heirs) and the six surviving children. Oxendine requested that Morton also represent her interests. Morton consulted with Overturf regarding representation of Oxendine, but failed to inform Overturf that Oxendine was a statutory wrongful death heir under Utah law. Morton was unaware of the 1991 amendments to Utah's wrongful death statute that included parents of a deceased as "heirs" entitled to share in wrongful death settlement proceeds. Overturf refused to authorize Morton to represent Oxendine, explaining that although Oxendine was Gay's biological mother, she had abandoned Gay during her early childhood to be raised by Gay's grandparents. After Morton informed Oxendine that he would not represent her, Oxendine retained Michael Lawrence as counsel, who filed an "Appearance of Counsel" and a "Notice of Interested Heir" on Oxendine's behalf in the law suit between Overturf and the Medical Center.

¶3 On June 7, 1996, a negotiation session was held by counsel for the Medical Center and counsel for Overturf. Neither Oxendine nor her counsel Lawrence were notified of the meeting. At that time, the parties reached a settlement agreement resolving the claims against the Medical Center. Thereafter, the parties formally stipulated to the dismissal of the original action. Oxendine was not included in the negotiations and did not receive any portion of the settlement proceeds.

¶4 On July 16, 1996, Oxendine filed a motion to set aside the settlement, claiming that she is an heir under the wrongful death statute and, as such, is entitled to share in the settlement proceeds. The district court heard and denied Oxendine's motion to set aside the settlement on the basis that she had a duty to intervene in the original action and had failed to do so. Oxendine appealed and we have affirmed the district court. *See Overturf v. University of Utah Med. Ctr.,* No. 960496, slip op. at ¶5, 973 P.2d 2–3, ¶5 (Utah Jan. 22, 1999).

¶5 Oxendine filed a second suit against the Medical Center to recover damages as an heir of Gay Overturf. The Medical Center moved for summary judgment, arguing that the "one-action rule" in Utah Code section 78–11–7 barred Oxendine's suit. The district court granted that motion. We reversed the district court's decision, holding that although generally only one action may be maintained against a wrongful death defendant, Oxendine might prevail against the Medical Center if it " 'cooperat[ed], collud[ed], and conniv[ed]' " with the other heirs to exclude her from a recovery. *Oxendine v. University of Utah Med. Ctr.,* No. 970097, slip op. at ¶7, 973 P.2d 3, ¶7 (Utah Jan. 22, 1999) (quoting *Parmley v. Pleasant Valley Coal Co.,* 64 Utah 125, 228 P. 557, 562 (1924)).

¶6 While the aforementioned appeals were pending before this court, Oxendine filed a complaint against the co-heirs and their attorneys alleging a cause of action for contribution against the co-heirs, and a cause of action for breach of a third-party beneficiary contract against the co-heirs' attorneys. On June 12, 1997, the co-heirs and their attorneys filed a motion to dismiss, which the district court treated as a motion for summary judgment and granted. The district court concluded that Oxendine had no claim for contribution against the co-heirs and that she was not an intended beneficiary of the agreement between Overturf and his attorneys and, therefore, could not recover as a third party beneficiary of the contract. Oxendine then filed this appeal.

¶7 Summary judgment is appropriate only where there are no disputed material facts and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *DOIT, Inc. v. Touche, Ross & Co.,* 926 P.2d 835, 841 (Utah 1996). We review the district court's grant of summary judgment for correctness, according no def-

erence to that court's legal conclusions. *See Pratt v. Mitchell Hollow Irr. Co.*, 813 P.2d 1169, 1171 (Utah 1991).

¶ 8  Oxendine asserts that the trial court erred in dismissing her claims against the co-heirs because a personal representative bringing a wrongful death action does so on behalf of all the statutory heirs.  Because Frank Overturf brought an action against the Medical Center on behalf of the statutory heirs and then excluded her from receiving any portion of the settlement, Oxendine argues that Overturf breached a fiduciary duty to her.  As a result, Oxendine claims that she can recover her share of the settlement from Overturf and the other co-heirs.  Oxendine also asserts that the trial court erred in concluding that Overturf's counsel, James Morton, owed no duty to her as a statutory beneficiary.  Oxendine contends that she is an intended third party beneficiary of the attorney-client agreement between Overturf and Morton in which Morton agreed to represent Overturf as the personal representative of Gay Overturf's heirs.  By failing to represent her interests, Morton breached a duty to her and, consequently, he is liable for damages Oxendine suffered by being excluded from the settlement.  Finally, Oxendine suggests that the district court erred in ruling on a rule 11 motion for sanctions when such motion was not properly before the court.  We will examine the raised issues in turn.

## I.  DUTY OF THE PERSONAL REPRESENTATIVE AND THE CO–HEIRS

¶ 9  At common law there was no cause of action for wrongful death; thus, wrongful death claims and recovery are governed by statute.  *See Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1183–84 (Utah 1983).  Utah's wrongful death statute provides that a "personal representative" may maintain an action against a tort-feasor "for the benefit of [the] heirs."  Utah Code Ann. § 78–11–7 (1996).  Thus, when a personal representative brings a wrongful death action, he does so for the benefit of all statutory heirs.  *See Tracy v. University of Utah Hosp.*, 619 P.2d 340, 342 (Utah 1980) (stating

wrongful death damages are "awarded in trust for all the heirs"); *Switzer v. Reynolds*, 606 P.2d 244, 246 (Utah 1980) (announcing that the single action for wrongful death is for the benefit of all heirs); *see also Haro v. Haro*, 887 P.2d 878, 879 (Utah Ct.App.1994) (stating that recovery must be pursued on behalf of the decedent's heirs and not for the estate); 25A C.J.S. *Death* § 33(1) (1966 and Supp.1998).  Therefore, the personal representative incurs a fiduciary obligation to all statutory heirs whether they intervene in the action or not.  *See Parmley*, 228 P. at 562; *Switzer*, 606 P.2d at 248; *Tracy*, 619 P.2d at 342–43.  Section 78–11–6.5 defines heirs for the purpose of the wrongful death statute; that definition includes a decedent's parents.  *See* Utah Code Ann. § 78–11–6.5.

¶ 10  In the instant case Overturf, as personal representative of Gay Overturf's heirs, had a fiduciary duty to collect and distribute the settlement proceeds to all of the statutory beneficiaries which, by statute, included Oxendine.  Therefore, Oxendine has a claim against Overturf for failing to properly represent her interests in this case.

¶ 11  Oxendine relies on dicta in *Parmley* and *Tracy* for the proposition that she has a cause of action for contribution against all the co-heirs.  *See Tracy*, 619 P.2d at 342–43 (suggesting an excluded heir can resort to "a separate action for contribution"); *Parmley*, 64 Utah 125, 228 P. at 562 (stating an excluded heir "may always bring an action against his co-heirs for contribution").  However, under the wrongful death statute, a co-heir who does not assume the obligations of the personal representative had no duty to represent Oxendine's interest in a wrongful death suit.  Thus, we hold that Oxendine is limited to bringing an action against the personal representative and disavow the dicta in *Parmley* and *Tracy* suggesting that an action in contribution is available against all co-heirs.  As a result, the district court correctly dismissed the claim for contribution against the co-heirs who did not act as a personal representative.

## II.  DUTY OF ATTORNEY TO NON–CLIENT

¶ 12  Oxendine next contends that the attorneys for the personal representative had a

duty to protect her interest in the settlement proceeds. Oxendine asserts that the duty is derived from the attorney-client agreement between Morton and Overturf. Oxendine argues that as a statutory wrongful death heir she automatically acquired the status of a third party beneficiary of the attorney-client agreement because the sole purpose of that agreement was to provide a benefit to the statutory heirs.

¶ 13 Historically, an attorney could not be held liable to a non-client absent fraud, collusion or privity of contract. *See National Sav. Bank v. Ward*, 100 U.S. 195, 205–06, 25 L.Ed. 621 (1880); *Hughes v. Housley*, 599 P.2d 1250, 1253–54 (Utah 1979) (stating attorney's obligation is to his client not to third parties). The modern trend is to abandon or relax the privity requirement recognizing that under certain circumstances a lawyer may have a duty to exercise reasonable care toward a non-client. *See, e.g., Leyba v. Whitley*, 120 N.M. 768, 907 P.2d 172, 180 (1995) (implying a duty to non-client wrongful death beneficiaries when attorney undertakes to represent personal representative in wrongful death action); *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318, 320–22 (1992)(stating attorney owes a duty to non-client absent privity of contract when attorney and third party have a relationship "so close as to approach that of privity"); *Biakanja v. Irving*, 49 Cal.2d 647, 320 P.2d 16, 19 (1958) (en banc) (rejecting privity requirement for duty to non-client); *see generally* Joan Teshima, Annotation, *Attorney's Liability, To One Other Than Immediate Client, For Negligence In Connection With Legal Duties*, 61 A.L.R.4th 615 (1988 & Supp.1997) (detailing modern trend to abandon privity requirements in attorney negligence and malpractice cases).

¶ 14 The predominant inquiry in any third party beneficiary case is whether the contracting parties clearly intended the third party to receive a separate and distinct benefit from the contract. *See American Towers Owners Ass'n v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1188 (Utah 1996). That same inquiry dominates in the setting of attorney liability to non-clients.

¶ 15 As recognized in *Leyba*, "there can be no other purpose of an attorney-client agreement to pursue claims for wrongful death than to benefit those persons specifically designated by the [statute] as statutory beneficiaries." 120 N.M. 768, 907 P.2d 172, 180 (1995). "[T]he very nature of a wrongful death action is such that we will imply in law a term in every agreement between an attorney and ·personal representative that the agreement is formed with the intent to benefit the statutory beneficiaries of the action." *Id.*

¶ 16 Thus, as in *Leyba*, we conclude that generally a statutory wrongful death beneficiary is an intended beneficiary of the attorney-client agreement between the personal representative and his or her counsel. Consequently, in most cases, the personal representative's attorney will have a fiduciary duty to represent the interests of all statutory heirs.

¶ 17 In this case, however, Overturf's attorneys rely on the conflict exception to the fiduciary duty owed to Oxendine as set forth in *Leyba* and in *Klancke v. Smith. See Klancke v. Smith*, 829 P.2d 464, 466 (Colo.Ct. App.1991) (stating that growing animosity between wrongful death beneficiaries precluded attorney from representing all beneficiaries); *Leyba*, 907 P.2d at 181 (concluding an attorney has no duty to a party with whom a conflict develops). Those cases hold that attorneys in wrongful death cases cannot owe a duty to a party with whom the personal representative has a conflict. *See id.* Overturf's attorneys reason that they have no duty to Oxendine because Overturf did not want his attorneys to represent Oxendine. Overturf did not think she should receive a portion of the settlement because Oxendine was estranged from the decedent. Overturf's attorneys also emphasize that they told Oxendine that they would not represent her and that she in fact retained her own counsel.

¶ 18 We agree. As the New Mexico Supreme Court pointed out in *Leyba*, "when an adversarial relationship develops between the client and the third party—as a matter of public policy the attorney's duty to

the third party should end." 907 P.2d at 182. This is especially true if the attorney tells a third party that he or she will not represent its interests. *See id.* As set forth above, a conflict arose between the personal representative and Oxendine. Oxendine concedes that Overturf's counsel informed her of this conflict and that she hired her own counsel as a result. Thus, Oxendine knew she could not rely on Overturf's attorneys to represent her interests and she is precluded from bringing an action against them directly.

### III. DAMAGES

¶ 19 In any action brought against Overturf or his attorneys, Oxendine must still prove that she is entitled to recover damages. Damage awards in wrongful death cases reflect the loss of the individual plaintiff. *See Switzer v. Reynolds*, 606 P.2d 244, 247 (Utah 1980) (stating that Utah's wrongful death statute compensates the heirs for their individual loss); *In re Behm's Estate*, 117 Utah 151, 159, 213 P.2d 657, 661 (1950) (claiming compensation in wrongful death cases should be proportionate to an individual heir's loss). In assessing damages, the district court must analyze each heir's entitlement under the following elements ordinarily considered in determining the value of the survivor's claim: "financial support furnished; loss of affection, counsel and advice; the loss of deceased's care and solicitude for the welfare of the family; and loss of the comfort and pleasure the family of the deceased would have received." *Switzer*, 606 P.2d at 246; *see also In re Behm's Estate*, 213 P.2d at 661. We have observed that "the greatest losses arising from the wrongful death of a child are not those losses which are economic in nature. It is the loss of society, love, companionship, protection and affection which usually constitute the heart of the action." *Jones v. Carvell*, 641 P.2d 105, 108 (Utah 1982).

¶ 20 Thus, in any subsequent action, Oxendine must prove she is entitled to damages in light of the aforementioned factors, which may prove difficult, if, as Overturf alleges, she abandoned the decedent as a young child. *See* 25A C.J.S. *Death* § 37(2)(c) n. 13.55 (1966 and Supp.1998) (citing cases in which abandonment of decedent limited or preclud-

ed sharing in wrongful death settlement). Whether Oxendine can recover, however, is a matter for the trial court.

### IV. RULE 11 MOTION

¶ 21 Finally, Oxendine asserts that the trial court erred in ruling on her motion for sanctions pursuant to rule 11 of the Utah Rules of Civil Procedure. The record reflects that Oxendine's rule 11 motion was never properly before the trial court. *See* Utah R. Civ. P. 11(c)(1)(A). Thus, the trial court erred in ruling on that motion.

### V. CONCLUSION

¶ 22 The district court's dismissal of Oxendine's claims against all co-heirs except Overturf as personal representative and against Overturf's attorneys is affirmed. However, we reverse the district court's dismissal of Oxendine's claims against Overturf as the personal representative of Gay Overturf's estate, concluding that Overturf had a fiduciary duty to represent Oxendine's interests in the wrongful death action. Finally, the trial court erred in ruling on a motion for rule 11 sanctions that was not properly before it.

Chief Justice HOWE, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Associate Chief Justice DURHAM'S opinion.