777 N.W.2d 545 (2010)
279 Neb. 187
Esteban PEREZ, a minor child, brought by his natural mother and next friend, Reyna Guido, et al., appellants,
v.
Sandra STERN, appellee.
No. S-07-904.
Supreme Court of Nebraska.
January 15, 2010.
*548 Steven H. Howard, of Dowd, Howard & Corrigan, L.L.C., Omaha, for appellants.
Robert M. Slovek and Kathryn E. Jones, of Kutak Rock, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.
GERRARD, J.

NATURE OF CASE
Appellant Reyna Guido filed legal malpractice claims against appellee, Sandra Stern, on behalf of herself, her two children, and the estate of Domingo Martinez. Guido had hired Stern to prosecute a wrongful death claim against persons alleged to be responsible for Martinez' death. Stern filed the complaint, but it was not served within 6 months of filing, so the case was dismissed. Almost 3 years later, Guido filed these legal malpractice claims. The district court granted Stern's motion for summary judgment, finding that the malpractice claims were barred by the statute of limitations.
The issue in this case is whether Stern owed an independent duty to the children, as Martinez' statutory beneficiaries, to exercise reasonable care in prosecuting the underlying wrongful death claim, permitting the children to bring individual malpractice claims for which the statute of limitations had been tolled because of their minority. For the reasons that follow, we conclude that Stern owed a duty to the children and reverse the court's judgment against their claims.

FACTS
Guido is the mother of two minor children. Martinez, the children's father, died after he was run over by a car on July 8, 2001. Martinez was the victim of a hit-and-run accident.
Guido, as personal representative of Martinez' estate, retained Stern to file a wrongful death lawsuit. On July 8, 2003, Stern filed a wrongful death complaint in the district court. But Stern admits that she never perfected service of the complaint, and because the complaint was not served within 6 months of filing, the case was dismissed by operation of law.[1] The district court formalized the dismissal on May 7, 2004.
Stern never contacted Guido, and eventually Guido hired a new attorney. Guido's new attorney sent Stern a letter dated December 5, 2005, requesting Guido's client file. After several more letters, the client file was finally delivered on February 6, 2006. On February 6, 2007, Guido filed these legal malpractice claims against Stern on behalf of herself, the children, and the estate. Guido alleged that the wrongful death claim expired as a result of Stern's failure to timely perfect service of the complaint. Stern moved for summary judgment on the ground that the malpractice claims were barred by the 2-year statute of limitations for professional negligence.[2] Before the court ruled on the motion, Guido voluntarily dismissed her individual claim, but maintained claims as personal representative of the estate and next friend of the children.
*549 The district court found that the malpractice claims accrued on May 7, 2004, when the wrongful death claim was dismissed. The court found that the estate's claim against Stern was time barred. In response to Guido's argument that the children's minority tolled the statute of limitations with respect to them, the court found that because the children could not have brought the underlying wrongful death claim in their own names,[3] the statute of limitations for the legal malpractice claims was not tolled by reason of the children's minority. The court granted summary judgment in favor of Stern and dismissed the complaint.

ASSIGNMENTS OF ERROR
Guido assigns, consolidated and restated, that the district court erred in granting Stern's motion for summary judgment on her affirmative defense of the statute of limitations and, specifically, determining that the children had no independent standing to sue Stern and that Stern owed no independent duty to the minor children to protect their rights and interests.
We note that neither Guido's assignments of error nor the argument in her appellate brief challenges the district court's dismissal of Guido's claims as an individual and as personal representative of Martinez' estate. Therefore, those aspects of the court's judgment will be affirmed.

STANDARD OF REVIEW
Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, giving that party the benefit of all reasonable inferences deducible from the evidence.[5]
Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular case.[6] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[7]

ANALYSIS
The issue in this case is whether Stern owed an independent duty to the children, as Martinez' next of kin, to timely prosecute the underlying wrongful death claim. Guido argues that Stern committed legal malpractice when Stern breached her duty to timely prosecute the wrongful death claim against the underlying tort-feasors, and that because Stern owed an independent duty to the children, the statute of limitations is tolled on their legal malpractice claims. Stern, on the other hand, argues that because the children never had their own claims for relief in the underlying wrongful death action, they lack standing to bring professional negligence claims against Stern.
We agree with Guido that if the children have malpractice claims against Stern, the statute of limitations on those claims has *550 been tolled by the children's minority.[8] In order to have claims for professional negligence against Stern, the children must prove (1) Stern's employment, (2) Stern's neglect of a reasonable duty to the children, and (3) that such negligence was the proximate cause of damages to the children.[9] In this appeal, Stern's employment to prosecute the wrongful death claim is undisputed, and damages are not yet at issuethe dispositive question is whether Stern owed the children a legal duty.
In Nebraska, a lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of his or her duties, but ordinarily this duty does not extend to third parties, absent facts establishing a duty to them.[10] Guido argues first that the children had an attorney-client relationship with Stern. Guido's contention that Stern was the attorney for the children is, however, contrary to the well-established principle that when an attorney is employed to render services for an estate, he or she acts as attorney for the personal representative.[11] Although the minor children would have benefited from a successful wrongful death claim, there are no facts in this record to establish an attorney-client relationship between Stern and the minor children.
But that does not end our analysis. Contrary to Stern's suggestion, we have never said that privity is an absolute requirement of a legal malpractice claim. Instead, we have said that a lawyer's duty to use reasonable care and skill in the discharge of his or her duties ordinarily does not extend to third parties, absent facts establishing a duty to them.[12] On the facts of this case, we conclude, as have other courts to have addressed this issue in the context of a wrongful death action,[13] that the facts establish an independent legal duty from Stern to Martinez' statutory beneficiaries.
Although we have often said that an attorney's duty may extend to a third party if there are facts establishing a duty,[14] we have not articulated specific standards to guide the determination of whether such a duty exists. The substantial majority of courts to have considered that question have adopted a common set of cohesive principles for evaluating an attorney's duty of care to a third party, founded upon balancing the following factors: (1) the extent to which the transaction was intended to affect the third party, *551 (2) the foreseeability of harm, (3) the degree of certainty that the third party suffered injury, (4) the closeness of the connection between the attorney's conduct and the injury suffered, (5) the policy of preventing future harm, and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession.[15] And courts have repeatedly emphasized that the starting point for analyzing an attorney's duty to a third party is determining whether the third party was a direct and intended beneficiary of the attorney's services.[16]
We agree. Under Nebraska law, an attorney's professional misconduct gives rise to a tort action for professional negligence;[17] the factors discussed above are effectively a fact-specific iteration of the basic risk-utility principles that we have generally relied upon in determining the scope of a tort duty.[18] And when an attorney is retained specifically to advance the interests of third parties, absent countervailing circumstances, it makes no sense to conclude that the attorney owes no duty to those parties to advance their interests competently. We decline to exalt form over substance when the purpose of the attorney's retention was clear to both the attorney and the client.
Those balancing factors also support a number of important, specific limitations on liability in attorney malpractice cases. First, the attorney's agreement with the client determines the scope of the attorney's duty to a third-party beneficiary; the duty to use due care as to the interests of the intended beneficiary must arise out of the attorney's agreement with the client.[19] An attorney may limit the scope of his or her representation by obtaining the informed consent of his or her client.[20] For example, it has been held that the attorneys for the decedent's heirs in a wrongful death action owed no duty to the decedent's mother, where the personal representative specifically told the attorneys and the mother that he did not want them to represent her.[21]
*552 Second, a person who is adverse to the attorney's client cannot be a beneficiary of the attorney's retention; almost universally, courts have not found a duty to a client's adversary in litigation.[22] For instance, the attorney hired by a child seeking placement outside his mother's home owed no duty to the mother to advise her of the consequences of juvenile court proceedings.[23]
Third, an attorney's knowledge that the representation could injure or benefit an identified person will not, without more, create a duty to that person.[24] Foreseeability cannot be the sole basis for finding a duty, although a court should not find a duty where foreseeability is absent.[25] For example, it was held that an attorney for a husband in a divorce action was not liable to the client's second wife for emotional distress suffered when the divorce was set aside due to the attorney's negligence, because the second wife was an incidental but not an intended beneficiary of the divorce.[26]
Finally, a duty to a third party will not be imposed if that duty would potentially conflict with the duty the attorney owes his or her client, most often because the third party's interests conflict with the client's.[27] In fact, an attorney is ethically obliged to inform his or her client when such conflicts of interest are apparent.[28] For example, it has been held that an attorney representing an heir in a wrongful death action owes no duty to other heirs when the different heirs may have conflicting interests in the recovery.[29] It has also been held that an attorney for the personal representative of an estate owed no duty to the beneficiaries of the estate where there was a risk that the beneficiaries' interests could conflict.[30] And it was held that an attorney for a spouse in a divorce action did not owe a separate duty to the couple's children, because the children's interests could compromise the attorney's representation of the client's interests.[31]
Such concerns are not implicated here. We acknowledge that the general rule limiting an attorney's duty to his or her client serves several important interests, as it preserves an attorney's loyalty to and advocacy for the client, limits the scope of an attorney's duty, and protects attorney-client confidentiality.[32] And imposing a duty on attorneys toward beneficiaries of whom they are unaware could risk dampening their zealous advocacy on *553 behalf of clients.[33]
But if a third party is a direct beneficiary of an attorney's retention, such that the end and aim of the attorney's representation is to affect the third party, then the interests favoring privity are not threatened by recognizing an attorney's duty to a third party whose interests he or she was actually hired to represent.[34] When an attorney's duty to a third party is limited to transactions intended to directly benefit the third party, it properly serves to prevent nonclients who receive only incidental or downstream benefits from holding the attorney liable.[35] And it is entirely in keeping with the fiduciary and ethical duties attorneys owe their clients to require an attorney, who has been informed of the client's intent to benefit a third party, to exercise reasonable care and skill in that regard.
We conclude that the well-settled principles set forth above provide appropriate guidance for us to determine whether the facts of any given case establish a duty to a third party, and to evaluate the scope of that duty. These principles permit injured parties to pursue claims where the basis for an attorney's duty was clear, while preserving client authority and the interests and responsibilities associated with the attorney-client relationship. And although we have not expressly stated these principles before today, our cases have been consistent with them.
For instance, we have held that an attorney who prepared a decedent's will owed no duty to any particular alleged beneficiary of the will.[36] Similarly, we have held that an attorney acting as the personal representative of an estate owed no duty to nonbeneficiaries of the estate to secure a gratuitous agreement from the beneficiaries to share their inheritance.[37] We have also held that the attorney for a joint venture owed no duty to three individual partners that was separate from the duty owed to the joint venture as a whole.[38] And we have held that an attorney owed no duty to the guarantors of leases which the attorney's clients defaulted on,[39] and that an attorney for a debtor owed no duty to a creditor based on allegedly defective collateral for the debt.[40] In none of those instances was it alleged that the "end and aim" of the attorney's retention was to benefit the third party alleging a duty. And in each of those instances, imputing a duty to the third party could have created conflicting loyalties to adverse or different parties.
The same cannot be said here. Courts to have considered the question have generally concluded that policy considerations weigh in favor of recognizing an attorney's duty to a decedent's next of kin in a wrongful death action.[41] We agree. In this case, it is clear that the children were direct and intended beneficiaries of the transaction. Stern was certainly aware of Guido's intent to benefit the children.
*554 In fact, under Nebraska's wrongful death statute, there could be no other purpose to Stern's representation. A wrongful death claim is brought in the name of the decedent's personal representative "for the exclusive benefit" of the decedent's next of kin.[42] The personal representative's sole task is to distribute any recovery in accordance with the statute, to the discrete and identifiable class of beneficiaries that the Legislature has specifically designated. Under § 30-810, the only possible purpose of an attorney-client agreement to pursue claims for wrongful death is to benefit those persons specifically designated as statutory beneficiaries.[43] The very nature of a wrongful death action is such that a term is implied, in every agreement between an attorney and a personal representative, that the agreement is formed with the intent to benefit the statutory beneficiaries of the action.[44]
Furthermore, concerns weighing against a finding of duty are not present in this case. Stern's potential duty to the children would not go beyond the duty owed to and specified by Guido.[45] Nor is there any evidence that a legal duty to the children would have interfered with Stern's duty to Guido, because there is nothing in the record in this case to suggest that the interests of Guido and the children were not aligned. At no time has Stern reported or alleged a conflict of interest. Finally, policy considerations favor a finding of tort duty. Stern was not helping her client, Guido, when she failed to perfect service. An ultimate finding of liability would not discourage vigorous representation; in fact, potential liability under circumstances such as these would encourage zealous advocacy of wrongful death claims.
In this case, we conclude that Stern owed a duty to the children, as direct and intended beneficiaries of her services, to competently represent their interests. To hold otherwise would deny legal recourse to the children for whose benefit Stern was hired in the first place. For those reasons, we find merit to Guido's assignment of error and conclude that the district court erred in entering judgment against the minor children.

CONCLUSION
As explained above, the facts of this case establish that Stern owed a legal duty to Martinez' minor children to exercise reasonable care in representing their interests. Therefore, they have standing to sue Stern for neglecting that duty, and their claims against Stern were tolled by their minority. The district court erred in concluding that their claims were time barred. We affirm the court's dismissal of Guido's individual claim and its determination that the estate's claim against Stern was time barred. But with respect to the children, this cause is reversed and remanded for further proceedings to fully adjudicate Guido's claims on behalf of the children in light of any asserted defenses.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
MILLER-LERMAN, J., not participating.
NOTES
[1] See, Neb.Rev.Stat. § 25-217 (Reissue 2008); Vopalka v. Abraham, 260 Neb. 737, 619 N.W.2d 594 (2000).
[2] See Neb.Rev.Stat. § 25-222 (Reissue 2008).
[3] See Neb.Rev.Stat. § 30-810 (Reissue 2008).
[4] In re Estate of Ronan, 277 Neb. 516, 763 N.W.2d 704 (2009).
[5] Harvey v. Nebraska Life & Health Ins. Guar. Assn., 277 Neb. 757, 765 N.W.2d 206 (2009).
[6] Swanson v. Ptak, 268 Neb. 265, 682 N.W.2d 225 (2004).
[7] Id.
[8] See, Neb.Rev.Stat. § 25-213 (Reissue 2008); Carruth v. State, 271 Neb. 433, 712 N.W.2d 575 (2006); Sacchi v. Blodig, 215 Neb. 817, 341 N.W.2d 326 (1983).
[9] See Borley Storage & Transfer Co. v. Whitted, 265 Neb. 533, 657 N.W.2d 911 (2003).
[10] Swanson, supra note 6.
[11] Id.; In re Estate of Wagner, 222 Neb. 699, 386 N.W.2d 448 (1986).
[12] Swanson, supra note 6.
[13] See, e.g., DeLuna v. Burciaga, 223 Ill.2d 49, 857 N.E.2d 229, 306 Ill.Dec. 136 (2006); Oxendine v. Overturf, 973 P.2d 417 (Utah 1999); Leyba v. Whitley, 120 N.M. 768, 907 P.2d 172 (1995); Brinkman v. Doughty, 140 Ohio App.3d 494, 748 N.E.2d 116 (2000); Jenkins v. Wheeler, 69 N.C.App. 140, 316 S.E.2d 354 (1984); Baer v. Broder, 86 A.D.2d 881, 447 N.Y.S.2d 538 (1982).
[14] See, e.g., Swanson, supra note 6; Bauermeister v. McReynolds, 253 Neb. 554, 571 N.W.2d 79 (1997); Gravel v. Schmidt, 247 Neb. 404, 527 N.W.2d 199 (1995); Earth Science Labs. v. Adkins & Wondra, P.C., 246 Neb. 798, 523 N.W.2d 254 (1994); Landrigan v. Nelson, 227 Neb. 835, 420 N.W.2d 313 (1988); Lilyhorn v. Dier, 214 Neb. 728, 335 N.W.2d 554 (1983); St. Mary's Church v. Tomek, 212 Neb. 728, 325 N.W.2d 164 (1982); Ames Bank v. Hahn, 205 Neb. 353, 287 N.W.2d 687 (1980).
[15] See Lucas v. Hamm, 56 Cal.2d 583, 364 P.2d 685, 15 Cal.Rptr. 821 (1961). See, also, McIntosh Cty. Bank v. Dorsey & Whitney, 745 N.W.2d 538 (Minn.2008); Calvert v. Scharf, 217 W.Va. 684, 619 S.E.2d 197 (2005); Watkins Trust v. Lacosta, 321 Mont. 432, 92 P.3d 620 (2004); Harrigfeld v. Hancock, 140 Idaho 134, 90 P.3d 884 (2004); In re Estate of Drwenski, 83 P.3d 457 (Wyo.2004); Paradigm Ins. Co. v. Langerman Law Offices, 200 Ariz. 146, 24 P.3d 593 (2001); Blair v. Ing, 95 Hawai'i 247, 21 P.3d 452 (2001); Leyba, supra note 13; Donahue v. Shughart, Thompson & Kilroy, P.C., 900 S.W.2d 624 (Mo. 1995) (en banc); Trask v. Butler, 123 Wash.2d 835, 872 P.2d 1080 (1994); Pizel v. Zuspann, 247 Kan. 54, 795 P.2d 42 (1990); Jenkins, supra note 13.
[16] See, McIntosh Cty. Bank, supra note 15; Calvert, supra note 15; Friske v. Hogan, 698 N.W.2d 526 (S.D.2005); In re Estate of Drwenski, supra note 15; Leak-Gilbert v. Fahle, 55 P.3d 1054 (Okla.2002); MacMillan v. Scheffy, 147 N.H. 362, 787 A.2d 867 (2001); Blair, supra note 15; Oxendine, supra note 13; Leyba, supra note 13; Donahue, supra note 15; Trask, supra note 15; Flaherty v. Weinberg, 303 Md. 116, 492 A.2d 618 (1985); Needham v. Hamilton, 459 A.2d 1060 (D.C. 1983); Pelham v. Griesheimer, 92 Ill.2d 13, 440 N.E.2d 96, 64 Ill.Dec. 544 (1982); Norton v. Hines, 49 Cal.App.3d 917, 123 Cal.Rptr. 237 (1975). See, generally, 1 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 7:8 (2009).
[17] See Swanson, supra note 6.
[18] See, e.g., Hughes v. Omaha Pub. Power Dist., 274 Neb. 13, 735 N.W.2d 793 (2007).
[19] See, Harrigfeld, supra note 15; Leyba, supra note 13; Pizel, supra note 15.
[20] See Neb. Ct. R. of Prof. Cond. § 3-501.2(b) (rev.2008).
[21] See Oxendine, supra note 13.
[22] See, Donahue, supra note 15; Lamare v. Basbanes, 418 Mass. 274, 636 N.E.2d 218 (1994); Bowman v. John Doe, 104 Wash.2d 181, 704 P.2d 140 (1985).
[23] See Bowman, supra note 22.
[24] Burger v. Pond, 224 Cal.App.3d 597, 273 Cal.Rptr. 709 (1990).
[25] See, Leak-Gilbert, supra note 16; Paradigm Ins. Co., supra note 15; Norton, supra note 16.
[26] See Burger, supra note 24.
[27] See, Oxendine, supra note 13; Lamare, supra note 22.
[28] See Neb. Ct. R. of Prof. Cond. §§ 3-501.4 and 3-501.7.
[29] See, Oxendine, supra note 13; Rhone v. Bolden, 270 Ga.App. 712, 608 S.E.2d 22 (2004).
[30] See Trask, supra note 15.
[31] See Rhode v. Adams, 288 Mont. 278, 957 P.2d 1124 (1998).
[32] See, e.g., In re Estate of Drwenski, supra note 15; Chem-Age Industries, Inc. v. Glover, 652 N.W.2d 756 (S.D.2002).
[33] See, McIntosh Cty. Bank, supra note 15; Noble v. Bruce, 349 Md. 730, 709 A.2d 1264 (1998).
[34] See McIntosh Cty. Bank, supra note 15.
[35] See, id.; Blair, supra note 15; Donahue, supra note 15.
[36] See, Lilyhorn, supra note 14; St. Mary's Church, supra note 14.
[37] See Swanson, supra note 6.
[38] See Bauermeister, supra note 14.
[39] See Landrigan, supra note 14.
[40] See Ames Bank, supra note 14.
[41] See, DeLuna, supra note 13; Oxendine, supra note 13; Leyba, supra note 13; Brinkman, supra note 13; Jenkins, supra note 13; Baer, supra note 13.
[42] § 30-810.
[43] See, Oxendine, supra note 13; Leyba, supra note 13.
[44] See id.
[45] See Leyba, supra note 13.