Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/03/2026 08:10 AM CST

- 83 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

Cory A. Kudlacek, appellant, v. Olson
Zalewski Wynner LLP, appellee.

___ N.W.3d ___

Filed February 17, 2026.    No. A-25-059.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.

2. **Summary Judgment: Proof.** The main purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled.

3. ____: ____. The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial.

4. ____: ____. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

5. **Attorney and Client.** As a general rule, the duty to exercise reasonable care and skill which a lawyer owes a client ordinarily does not extend to third parties.

6. **Malpractice: Attorney and Client: Proof: Negligence: Proximate Cause.** To succeed in a legal malpractice claim, a plaintiff must ultimately prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff.

- 84 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

7. **Negligence.** Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

8. **Contracts: Attorney and Client**. An attorney-client relationship ordinarily rests on contract, but it is not necessary that the contract be express or that a retainer be requested or paid. The contract may be implied from the conduct of the parties.

9. **Contracts: Attorney and Client: Proof**. An attorney-client relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.

10. **Malpractice: Attorney and Client: Proof.** To recover in a claim for malpractice against an attorney, it is necessary to establish that the relationship existed with respect to the act or omission upon which the malpractice claim is based.

11. **Attorney and Client: Parties.** A lawyer owes a duty to his or her client to use reasonable care and skill in the discharge of the lawyer's duties, but ordinarily, this duty does not extend to third parties, absent facts establishing a duty to them.

12. **Attorney and Client: Parties: Negligence: Liability.** Evaluation of an attorney's duty of care to a third party is founded upon balancing the following factors: (1) the extent to which the transaction was intended to affect the third party, (2) the foreseeability of harm, (3) the degree of certainty that the third party suffered injury, (4) the closeness of the connection between the attorney's conduct and the injury suffered, (5) the policy of preventing future harm, and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession.

13. **Attorney and Client: Parties: Intent.** The starting point for analyzing an attorney's duty to a third party is determining whether the third party was a direct and intended beneficiary of the attorney's services.

14. **Attorney and Client: Parties: Negligence: Intent.** An attorney's agreement with a client determines the scope of the attorney's duty to a third-party beneficiary; the duty to use due care as to the interests of the intended beneficiary must arise out of the attorney's agreement with the client.

15. **Attorney and Client: Informed Consent.** An attorney may limit the scope of his or her representation by obtaining the informed consent of his or her client.

16. **Attorney and Client.** A person who is adverse to an attorney's client cannot be a beneficiary of the attorney's retention.

- 85 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

17. **Attorney and Client: Parties: Conflict of Interest.** A duty from an attorney to a third party will not be imposed if that duty would potentially conflict with the duty the attorney owes his or her client.

18. **Attorney and Client: Conflict of Interest.** An attorney is ethically obliged to inform his or her client when conflicts of interest are apparent.

19. **Attorney and Client: Parties.** If a third party is a direct beneficiary of an attorney's retention, such that the end and aim of the attorney's representation is to affect the third party, then the interests favoring privity are not threatened by recognizing an attorney's duty to a third party whose interests he or she was actually hired to represent.

20. **Attorney and Client: Parties: Liability.** When an attorney's duty to a third party is limited to transactions intended to directly benefit the third party, it properly serves to prevent nonclients who receive only incidental or downstream benefits from holding the attorney liable.

21. **Attorney and Client: Parties.** It is entirely in keeping with the fiduciary and ethical duties attorneys owe their clients to require an attorney, who has been informed of the client's intent to benefit a third party, to exercise reasonable care and skill in that regard.

Appeal from the District Court for Lancaster County: Andrew C. Butler, Judge. Affirmed.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

Randall L. Goyette, Torrey J. Gerdes, and Susan M. Foster, of Baylor Evnen Wolfe & Tannehill, L.L.P., for appellee.

Pirtle, Welch, and Freeman, Judges.

Welch, Judge.

## INTRODUCTION

Cory A. Kudlacek, in his personal capacity as a beneficiary of Loran Kudlacek and Marlene Kudlacek's trust and estate, appeals from the Lancaster County District Court's order granting summary judgment in favor of Olson Zalewski Wynner LLP (the Law Firm). Cory contends the district court erred in finding that William E. Olson or the Law Firm owed Cory no duty as a client or third-party beneficiary and that the

- 86 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

statute of limitations barred his claim for legal malpractice. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

### BACKGROUND

In February 2019, Loran and Marlene retained Olson, a legal partner at the Law Firm, to amend or revoke their individual 2010 living trusts and execute a new estate plan with one combined trust. On August 27, Marlene, individually and as power of attorney for Loran, executed the "Loran and Marlene Kudlacek Joint Revocable Trust Agreement" (the Trust) and a "Personal Property Joint Tenancy Agreement" between Loran and their son Cory. The parties do not dispute that these estate planning documents were intended to allow Cory to continue the family farming operation as long as he wanted and to have some retirement income; to provide for their other son, Chad Kudlacek; and to preserve the family farm operation for the ultimate benefit of their grandchildren. The Trust indicated that the Trust was revocable during Loran and Marlene's "joint lives" but that the "[t]rusts created by this Agreement shall become irrevocable and not subject to amendment at the death of one of the Settlors."

During and after the execution of the estate planning documents, Olson met with Cory regarding input on the farming operations because Cory was farming his parents' land. During a December 12, 2019, meeting between Olson, Cory, and Cory's wife, Olson explained how the estate planning documents operated. During the meeting, Cory's wife took notes, including her question of whether the Trust "[c]an be revoked during joint lifetime only" and the note that the "trust becomes irrevocable at death of one parent." These notes were admitted into evidence during a summary judgment hearing.

On March 13, 2020, Marlene, as cosettlor and cotrustee, and as attorney in fact for Loran, executed the "First Amendment to Loran and Marlene Kudlacek Joint Revocable Trust Agreement." This amendment provided that following

- 87 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

the death of the surviving settlor, the trustee, instead of paying Cory the net income of the trust, would divide the net income into two equal shares, and it appointed Cory and Chad as cosuccessor trustees. Loran passed away in July 2020.

The year following Loran's death, a disagreement arose between Marlene and Cory that resulted in Marlene's disputing, among other things, the validity of the August 2019 estate planning documents and the subsequent amendment. Litigation ensued between Cory, as a beneficiary, and Marlene, as personal representative of Loran's estate, but that matter was ultimately settled pursuant to a settlement agreement and termination of the trust agreement in April 2024.

### COMPLAINT AND ANSWER

Prior to executing the family settlement agreement, on March 14, 2022, Cory filed a complaint in the Lancaster County District Court alleging claims of professional negligence against Olson and negligence against the Law Firm via the doctrine of respondeat superior. Cory's complaint alleged that Olson, who was employed at the Law Firm as an attorney, began providing estate planning services to his parents in 2019 and that throughout the course of Olson's representation of Loran and Marlene, they unambiguously expressed to Olson that they intended for Cory "to have the ability to farm the real estate he held for as long as he wanted, with little interference by others." Olson drafted and executed the trust agreement and joint property agreement expressing Loran and Marlene's wishes on August 27, 2019. Cory alleged that following the execution of the estate planning documents, Olson "communicated extensively with Cory and Cory's wife" regarding Cory's farming of Loran and Marlene's agricultural real estate. Cory alleged that despite the unambiguous expression by Loran and Marlene that they wanted their estate plan to be irrevocable, the executed estate planning documents mistakenly provided that the documents could be revoked during the lifetime of Loran or Marlene. He further stated that

- 88 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

Olson's execution of the estate planning documents may have rendered them "potentially invalid since Loran did not personally execute them and Marlene's power of attorney likely did not give her express authority to sign documents purporting to modify Loran's estate plan." Cory's complaint further alleged that during Olson's continued representation of Loran and Marlene, Olson prepared an amendment to the joint trust document modifying the estate plan "in a manner disadvantageous to Cory as compared to the previous estate plan and clearly contrary to Loran's inten[t]." Cory asserted that he did not discover that Marlene attempted to amend the estate planning documents until approximately September 8, 2020. Cory alleged that Olson was negligent in failing to correct the trust documents to make them irrevocable pursuant to Loran and Marlene's intent and in failing to redraft the documents so Loran could personally sign them to ensure the validity of the new estate plan.

In the Law Firm's amended answer, which was filed after Marlene and Cory entered into a family settlement agreement regarding Loran's estate, the Law Firm stated that Loran and Marlene expressed to Olson that they intended Cory to have the ability to farm the real estate in the manner and extent as set forth in the revocable trust agreement. The Law Firm admitted that Olson directly communicated with Cory during Olson's representation of Loran and Marlene and that Cory was actively farming the family's real estate. The Law Firm denied that the estate planning documents were drafted contrary to Loran and Marlene's intent, that the subsequent amendment to the estate planning documents was contrary to Loran's intent, and that Olson or the Law Firm owed any duty to Cory. The Law Firm alleged that Cory lacked standing to assert any claims against either Olson or the Law Firm; that no privity existed between Cory and Olson or the Law Firm; that Cory's amended complaint failed to state a claim for relief; that Cory's complaint was barred by the statute of limitations; that Cory was not, and had never been, a client

- 89 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

and therefore was owed no duty; that Cory failed to mitigate damages; and that Cory voluntarily settled all his claims against Marlene individually and as the personal representative of Loran's estate and against Chad. Therefore, the Law Firm alleged that Cory's claims were barred by the doctrine of accord and satisfaction, waiver, and the doctrine of estoppel and that Cory's settlement with Marlene constituted an intervening cause. The Law Firm requested that the court dismiss Cory's complaint.

## DISMISSAL OF ACTION AGAINST OLSON

In January 2023, the district court dismissed the action against Olson pursuant to Neb. Rev. Stat. § 25-217 (Cum. Supp. 2024) because service upon Olson occurred more than 180 days after the commencement of the action.

## MOTION FOR SUMMARY JUDGMENT

In October 2024, the Law Firm filed a motion for summary judgment asserting that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. The firm's brief in support of summary judgment asserted that the Law Firm did not owe a duty to Cory as a client or beneficiary under the estate plan.

Following a hearing thereon, the district court entered an order granting the Law Firm's motion for summary judgment based upon its findings that the Law Firm did not owe Cory a duty as a third-party beneficiary; that Cory was not a client of the Law Firm; and that Cory's claims were barred by the applicable statute of limitations, which began to accrue on August 27, 2019.

Cory now appeals from the district court's order granting summary judgment in favor of the Law Firm.

## ASSIGNMENTS OF ERROR

Cory assigns, consolidated, that the district court erred in granting summary judgment in favor of the Law Firm based upon its findings that (1) the Law Firm did not owe a duty to

- 90 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

Cory as a client, (2) the Law Firm did not owe a duty to Cory as a third-party beneficiary, and (3) the statute of limitations barred Cory's claim.

## STANDARD OF REVIEW

[1] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

[2-4] Before addressing Cory's assignments of error, we review the standards applicable to summary judgment procedure. The main purpose of the summary judgment procedure is to pierce the allegations in the pleadings and show conclusively that the controlling facts are other than as pled. *Rice v. Poppe*, 293 Neb. 467, 881 N.W.2d 162 (2016). The party moving for summary judgment must make a prima facie case by producing enough evidence to show that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Id*. If the party moving for summary judgment makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.*

### Duty to Cory as Client

Cory first argues that the court erred in granting summary judgment in favor of the Law Firm on the basis that the Law Firm did not owe Cory a duty as a client.

- 91 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

[5] The Nebraska Supreme Court considered similar issues in *Lilyhorn v. Dier*, 214 Neb. 728, 335 N.W.2d 554 (1983), and *St. Mary's Church v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982), wherein purported beneficiaries of wills brought malpractice suits against the attorney drafters of the wills, contending that the attorneys committed malpractice by improperly drafting wills that did not comport with the testators' intent, resulting in damage to the beneficiaries. In both cases, the Nebraska Supreme Court affirmed the district court's grant of summary judgment in favor of the attorney drafters, holding that "as a general rule the duty to exercise reasonable care and skill which a lawyer owes [a] client ordinarily does not extend to third parties." *Lilyhorn v. Dier*, 214 Neb. at 730, 335 N.W.2d at 555 (citing *St. Mary's Church v. Tomek, supra*). In both cases, where the undisputed record revealed the beneficiaries were not clients of the firm, the court dismissed the beneficiaries' claims on the basis that there was no duty owed by the attorneys to the nonclient beneficiaries. Thus, the first question we must address is whether the district court erred in finding on this record that Cory was not a client of the Law Firm.

[6,7] Cory's complaint alleged legal malpractice against the Law Firm. To succeed in a legal malpractice claim, a plaintiff must ultimately prove three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) that such negligence resulted in and was the proximate cause of loss to the plaintiff. *Rice v. Poppe, supra*. Whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024).

[8,9] An attorney-client relationship ordinarily rests on contract, but it is not necessary that the contract be express or that a retainer be requested or paid. *Ross, Schroeder v. Artz*, 23 Neb. App. 545, 875 N.W.2d 457 (2016). The contract may be implied from the conduct of the parties. *Id.* An attorney-client relationship is created when (1) a person

- 92 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Id.*

Here, the Law Firm denies that Cory retained Olson or the Law Firm for legal services and denies that Cory was a client of the Law Firm. The engagement letter, signed by Loran, Marlene, and Olson in his capacity as a lawyer for the Law Firm, provided:

> You have requested our representation to review, recommend and complete a new estate plan. The central purposes of the new estate plan will be to provide for both of you during your lives, preserve the family farming operation for the ultimate benefit of your grandchildren, provide protection for your son, Cory as long as he desires to continue farming, and then, provide a retirement income for him from the farm operations and to provide for your son, Chad from your estate in some form/amount without jeopardizing Cory's farming operations. . . .
>
> . . . .
>
> We will, as necessary, rely on information and documents to be provided by you or others on your behalf as this matter goes forward.

Although Cory acknowledges that there was no written contract between himself and the Law Firm, he nevertheless asserts that the nature of Olson's statements and actions during communications with Cory and his wife created an attorney-client relationship and that, as a result, Olson and the Law Firm owed Cory a duty of reasonable care as a client of the Law Firm. We disagree.

[10] To recover in a claim for malpractice against an attorney, "'[i]t is necessary to establish that the relationship existed with respect to the act or omission upon which the malpractice claim is based.'" *McVaney v. Baird, Holm, McEachen*, 237 Neb. 451, 459, 466 N.W.2d 499, 506 (1991). Here, the

- 93 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

specific malpractice claim in Cory's complaint alleged negligence associated with the August 2019 estate planning documents drafted by Olson. More specifically, Cory alleged the trust document was intended by his parents to be irrevocable upon execution and that the estate planning documents were executed improperly.

Despite Cory's claims, the record is clear that the scope of the attorney-client relationship associated with the August 2019 estate planning documents was set forth in the written engagement letter entered into between the Law Firm, Loran, and Marlene on February 25, 2019. That written engagement letter explicitly provided that it was entered into between or among the Law Firm, Loran, and Marlene; that Loran and Marlene engaged the Law Firm to review, recommend, and complete a new estate plan; and that the "central purposes" of the plan

> will be to provide for both [Loran and Marlene] during [their] lives, preserve the family farming operation for the ultimate benefit of [Loran and Marlene's] grandchildren, provide protection for [their] son, Cory as long as he desires to continue farming, and then, provide a retirement income for him from the farm operations and to provide for [their] son, Chad from [their] estate in some form/amount without jeopardizing Cory's farming operations.

The engagement letter further provided that the Law Firm "will, as necessary, rely on information and documents to be provided by [Loran and Marlene] or others on [their] behalf as this matter goes forward."

Although Cory argues that there is evidence in the record that he and his wife met with Olson to provide input governing his parents' estate and trust plan and that they later met to obtain direction on how the estate planning documents would operate, neither of these encounters changed or impacted the scope of the Law Firm's representation regarding the August 2019 estate planning documents that Cory

- 94 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

claims were negligently prepared or executed. The scope of that representation was set forth in the engagement letter, which explicitly provided that the attorney-client relationship was entered into between the Law Firm and Loran and Marlene. The fact that the engagement letter documented the purpose of the engagement and expressed Olson's right to obtain information from Cory and others does not change the nature of the Law Firm's engagement; nor does the fact that, at Loran and Marlene's explicit direction, Olson subsequently met with Cory and his wife to obtain input on the plan and describe the plan's application.

Regarding the August 2019 estate planning documents that Cory claims were negligently prepared or executed, we hold the undisputed material facts on this record establish that Cory was not a client of the Law Firm. As such, we find the district court did not err in finding that on this record, there was no dispute of material fact that Cory was not a client of the Law Firm and was not owed a duty in that regard.

## DUTY TO CORY AS THIRD-PARTY BENEFICIARY

Our having determined that Cory was not a client of the law firm does not end our inquiry. We next address Cory's claim that the district court erred in finding that the Law Firm did not owe him a duty as a third-party beneficiary of the Trust or the "Personal Property Joint Tenancy Agreement." In support of that claim, Cory argues that the Nebraska Supreme Court's holding in *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010), opened the door to malpractice claims by nonclients under limited circumstances and that *Perez v. Stern* created a duty now recognized under Nebraska law.

[11-18] Before the Nebraska Supreme Court's decision in *Perez v. Stern*, the court had long held that "as a general rule the duty to exercise reasonable care and skill which a lawyer owes to [a] client ordinarily does not extend to third parties." *Lilyhorn v. Dier*, 214 Neb. 728, 730, 335 N.W.2d 554, 555 (1983) (emphasis supplied). See, also, *St. Mary's Church v.*

- 95 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

*Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982) (lawyer owes duty to client to use reasonable care and skill in discharge of duties, but ordinarily, this duty does not extend to third parties, absent facts establishing duty to them). In *Perez v. Stern*, 279 Neb. at 192-95, 777 N.W.2d at 550-52, the Nebraska Supreme Court articulated specific standards to determine whether an attorney's duty to a third party exists:

> Although we have often said that an attorney's duty may extend to a third party if there are facts establishing a duty, we have not articulated specific standards to guide the determination of whether such a duty exists. The substantial majority of courts to have considered that question have adopted a common set of cohesive principles for evaluating an attorney's duty of care to a third party, founded upon balancing the following factors: (1) the extent to which the transaction was intended to affect the third party, (2) the foreseeability of harm, (3) the degree of certainty that the third party suffered injury, (4) the closeness of the connection between the attorney's conduct and the injury suffered, (5) the policy of preventing future harm, and (6) whether recognition of liability under the circumstances would impose an undue burden on the profession. And courts have repeatedly emphasized that the starting point for analyzing an attorney's duty to a third party is determining whether the third party was a direct and intended beneficiary of the attorney's services.

> We agree. Under Nebraska law, an attorney's professional misconduct gives rise to a tort action for professional negligence; the factors discussed above are effectively a fact-specific iteration of the basic risk-utility principles that we have generally relied upon in determining the scope of a tort duty. And when an attorney is retained specifically to advance the interests of third parties, absent countervailing circumstances, it makes no sense to conclude that the attorney owes no duty to

- 96 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

those parties to advance their interests competently. We decline to exalt form over substance when the purpose of the attorney's retention was clear to both the attorney and the client.

Those balancing factors also support a number of important, specific limitations on liability in attorney malpractice cases. First, the attorney's agreement with the client determines the scope of the attorney's duty to a third-party beneficiary; the duty to use due care as to the interests of the intended beneficiary must arise out of the attorney's agreement with the client. An attorney may limit the scope of his or her representation by obtaining the informed consent of his or her client. For example, it has been held that the attorneys for the decedent's heirs in a wrongful death action owed no duty to the decedent's mother, where the personal representative specifically told the attorneys and the mother that he did not want them to represent her.

Second, a person who is adverse to the attorney's client cannot be a beneficiary of the attorney's retention; almost universally, courts have not found a duty to a client's adversary in litigation. For instance, the attorney hired by a child seeking placement outside his mother's home owed no duty to the mother to advise her of the consequences of juvenile court proceedings.

Third, an attorney's knowledge that the representation could injure or benefit an identified person will not, without more, create a duty to that person. Foreseeability cannot be the sole basis for finding a duty, although a court should not find a duty where foreseeability is absent. For example, it was held that an attorney for a husband in a divorce action was not liable to the client's second wife for emotional distress suffered when the divorce was set aside due to the attorney's negligence, because the second wife was an incidental but not an intended beneficiary of the divorce.

- 97 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

Finally, a duty to a third party will not be imposed if that duty would potentially conflict with the duty the attorney owes his or her client, most often because the third party's interests conflict with the client's. In fact, an attorney is ethically obliged to inform his or her client when such conflicts of interest are apparent. For example, it has been held that an attorney representing an heir in a wrongful death action owes no duty to other heirs when the different heirs may have conflicting interests in the recovery. It has also been held that an attorney for the personal representative of an estate owed no duty to the beneficiaries of the estate where there was a risk that the beneficiaries' interests could conflict. And it was held that an attorney for a spouse in a divorce action did not owe a separate duty to the couple's children, because the children's interests could compromise the attorney's representation of the client's interests.

Thus, the question here is, When applying the dictates of *Perez v. Stern* to this record, did the Law Firm owe Cory a duty as a third-party beneficiary of the contract between the Law Firm and Cory's parents?

[19-21] In *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010), the Nebraska Supreme Court ultimately held that, in limited circumstances, the facts of any given case can give rise to a duty by an attorney to a third party. More specifically, the court held:

But if a third party is a direct beneficiary of an attorney's retention, such that the end and aim of the attorney's representation is to affect the third party, then the interests favoring privity are not threatened by recognizing an attorney's duty to a third party whose interests he or she was actually hired to represent. When an attorney's duty to a third party is limited to transactions intended to directly benefit the third party, it properly serves to prevent nonclients who receive only incidental or downstream benefits from holding

- 98 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

the attorney liable. And it is entirely in keeping with the
fiduciary and ethical duties attorneys owe their clients to
require an attorney, who has been informed of the client's
intent to benefit a third party, to exercise reasonable care
and skill in that regard.

*Id*. at 196, 777 N.W.2d at 553. Applying that point of law
to the facts in *Perez v. Stern*, the court held that an attorney
retained by the personal representative of a decedent's estate
to effectuate a wrongful death action owed a duty to the dece-
dent children, as statutory beneficiaries, notwithstanding that
the children were not the attorney's client. In so finding, the
court held:

Courts [that] have considered the question have gener-
ally concluded that policy considerations weigh in favor
of recognizing an attorney's duty to a decedent's next of
kin in a wrongful death action. We agree. In this case, it
is clear that the children were direct and intended ben-
eficiaries of the transaction. [The attorney] was certainly
aware of [the client's] intent to benefit the children.

In fact, under Nebraska's wrongful death statute,
there could be no other purpose to [the attorney's]
representation. A wrongful death claim is brought in
the name of the decedent's personal representative "for
the exclusive benefit" of the decedent's next of kin. The
personal representative's sole task is to distribute any
recovery in accordance with the statute, to the discrete
and identifiable class of beneficiaries that the Legislature
has specifically designated. Under § 30-810, the only
possible purpose of an attorney-client agreement to pursue
claims for wrongful death is to benefit those persons
specifically designated as statutory beneficiaries. The
very nature of a wrongful death action is such that a term
is implied, in every agreement between an attorney and
a personal representative, that the agreement is formed
with the intent to benefit the statutory beneficiaries of
the action.

- 99 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

Furthermore, concerns weighing against a finding of duty are not present in this case. [The attorney's] potential duty to the children would not go beyond the duty owed to and specified by [the client]. Nor is there any evidence that a legal duty to the children would have interfered with [the attorney's] duty to [the client], because there is nothing in the record in this case to suggest that the interests of [the client] and the children were not aligned. At no time has [the attorney] reported or alleged a conflict of interest. Finally, policy considerations favor a finding of tort duty. [The attorney] was not helping [the client] when [the attorney] failed to perfect service. An ultimate finding of liability would not discourage vigorous representation; in fact, potential liability under circumstances such as these would encourage zealous advocacy of wrongful death claims.

*Perez v. Stern*, 279 Neb. 187, 197-98, 777 N.W.2d 545, 553-54 (2010). But in reaching this determination, the court distinguished its previous findings in *St. Mary's Church v. Tomek*, 212 Neb. 728, 325 N.W.2d 164 (1982); *Lilyhorn v. Dier*, 214 Neb. 728, 335 N.W.2d 554 (1983); and other cases wherein the court refused to extend an attorney's duty to third parties. In distinguishing the earlier cases, the Nebraska Supreme Court held: "In none of those instances was it alleged that the 'end and aim' of the attorney's retention was to benefit the third party alleging a duty. And in each of those instances, imputing a duty to the third party could have created conflicting loyalties to adverse or different parties." *Perez v. Stern*, 279 Neb. at 197, 777 N.W.2d at 553.

In the case at bar, as mentioned before, the scope of the Law Firm's representation of its clients, Loran and Marlene, was set forth in their written engagement letter that stated the purpose of the engagement was to provide for Loran and Marlene during their lives, preserve the family farm operation for the benefit of their grandchildren, provide protection for Cory as long as he desired to continue farming, and provide

- 100 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

for Chad, while balancing Loran and Marlene's interest in protecting the farming operation. Under these circumstances, policy considerations weigh against recognizing an attorney's duty to a nonclient. As the Nebraska Supreme Court held in *Perez v. Stern*: "[A] duty to a third party will not be imposed if that duty would potentially conflict with the duty the attorney owes his or her client, most often because the third party's interests conflict with the client's." 279 Neb. at 195, 777 N.W.2d at 552.

Here, a conflict is present in two different ways. First, Loran and Marlene engaged the Law Firm to craft estate planning documents designed to preserve their estate during their lives while eventually distributing their assets to their children in a manner that would keep the family farming operation within the family. Under these circumstances, the Law Firm could not zealously represent the interests of Loran and Marlene while also representing Cory's interests, because what was best for Cory might differ from what was best for Loran and Marlene, who also desired to provide for Chad. And as the Nebraska Supreme Court acknowledged in *Perez v. Stern*: "[A]n attorney for the personal representative of an estate owed no duty to the beneficiaries of the estate where there was a risk that the beneficiaries' interests could conflict." 279 Neb. at 195, 777 N.W.2d at 552.

Similarly here, Loran and Marlene engaged the Law Firm to create an estate plan that balanced Cory's and Chad's interests in relation to a final distribution, which most certainly created risks that the beneficiaries' interests could conflict.

As the Supreme Judicial Court of Massachusetts held in *Miller v. Mooney*, 431 Mass. 57, 63-64, 725 N.E.2d 545, 550-51 (2000):

> A client who engages an attorney to prepare a will may seem set on a particular plan for the distribution of her estate, as here. It is not uncommon, however, for a client to have a change of heart after reviewing a draft will. Confronting a last will and testament can produce

- 101 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

complex psychological demands on a client that may require considerable periods of reflection. An attorney frequently prepares multiple drafts of a will before the client is reconciled to the result. The most simple distributive provisions may be the most difficult for the client to accept. Considerable patience and compassion can be required of attorneys drafting wills, especially where the client seeks guidance through very private and sensitive matters. If a duty arose as to every prospective beneficiary mentioned by the client, the attorney-client relationship would become unduly burdened. Attorneys could find themselves in a quandary whenever the client had a change of mind, and the results would hasten to absurdity. The nature of the attorney-client relationship that arises from the drafting of a will necessitates against a duty arising in favor of prospective beneficiaries.

The instant case presents a good example of the kind of quandary discussed in *Miller v. Mooney, supra*. At the time Loran and Marlene retained the Law Firm, the potential for conflict was most certainly present, because the Law Firm was charged with the tasks of balancing Loran and Marlene's estate plan to provide for Loran and Marlene during their lives and then dividing their assets among their children while respecting that only Cory was engaged in the family farming operation. And the record indicates that Olson recognized that conflict, as he attested that he specifically advised Cory that he "could only represent Lor[a]n and Marlene." And much like the Supreme Judicial Court of Massachusetts' cautionary tale in *Miller v. Mooney*, Marlene apparently experienced a change of heart when she amended the August 2019 plan before Loran passed away and attempted to challenge its efficacy after Loran's death, which led to extensive litigation and the eventual settlement agreement between Marlene and Cory.

Here, the record effectively demonstrates why, in the estate planning context, an attorney's undivided loyalty must be to the client that hired the attorney to represent that person's

- 102 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
KUDLACEK v. OLSON ZALEWSKI WYNNER
Cite as 34 Neb. App. 83

interests. Further, the facts of this case fit squarely within the policy considerations and factors discussed in *Perez v. Stern*, 279 Neb. 187, 777 N.W.2d 545 (2010), militated against finding a third-party duty in similar circumstances. Accordingly, we hold that, on this record, material issues of fact are not in dispute and that, because of the nature of the conflict between Loran and Marlene on the first part, and Cory on the second, in relation to the August 2019 estate planning documents that Olson was retained to prepare, the district court did not err in concluding that the Law Firm owed no duty to Cory as a third-party beneficiary of Loran and Marlene's contract with the Law Firm. This assignment of error fails.

Because we find that these issues are dispositive of this appeal, we need not consider Cory's additional assignment of error related to the statute of limitations. See *Eadie v. Leise Properties*, 300 Neb. 141, 912 N.W.2d 715 (2018) (holding appellate court is not obligated to engage in analysis which is not needed to adjudicate controversy before it).

## CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of the Law Firm.

AFFIRMED.